# No. 24-3223

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

SILVIA DIAZ-ROA,

*Plaintiff-Appellee,*

*v.*

HERMES LAW, P.C.; SYZYGY LEGAL TECH, INC. d/b/a
CLAIMDECK; DWAYNE HERMES; and ANDREA HERMES,

*Defendants-Appellants.*

On Appeal from the U.S. District Court for the Southern District of New
York, Case No. 1:24-cv-2105-LJL

**BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED
STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF
DEFENDANTS-APPELLANTS**

Tara S. Morrissey
Jonathan D. Urick
U.S. CHAMBER LITIGATION CENTER
*1615 H Street, N.W.*
*Washington, DC 20062*
*(202) 463-5537*

Andrew J. Pincus
Archis A. Parasharami
Kevin S. Ranlett
MAYER BROWN LLP
*1999 K Street, NW*
*Washington, DC 20006-1101*
*(202) 263-3000*

Gabrielle Levin
MAYER BROWN LLP
*1221 Avenue of the Americas*
*New York, NY 10020-1001*
*(212) 506-2500*

*Counsel for* Amicus Curiae *the Chamber of Commerce of the United
States of America*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a) the Chamber of Commerce of the United States of America states that it is a non-profit tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

# TABLE OF CONTENTS

**Page(s)**

CORPORATE DISCLOSURE STATEMENT ............................................i

INTEREST OF *AMICUS CURIAE* ........................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ......................... 3

    I.    The District Court Misinterpreted the EFAA to Abrogate Agreements To Arbitrate Claims Unrelated to a Sexual-Harassment or Sexual-Assault Dispute............. 6

        A.    Under the EFAA's plain language, only claims that relate to sexual assault or sexual harassment may proceed in court................................. 6

            1.    The district court's interpretation is contrary to the EFAA's plain language and renders the EFAA's "relates to" language a surplusage. ........................................... 7

            2.    The district court improperly construed the term "case" without considering that term's settled legal meaning. ........................................ 11

        B.    The legislative history of the EFAA contradicts the district court's interpretation. ............................ 17

        C.    The ruling below contravenes Supreme Court precedent regarding the FAA and frustrates the FAA's and EFAA's purposes. ...................................... 21

    II.    The District Court's Misreading of the EFAA Harms Businesses, Workers, and Consumers................................. 27

CONCLUSION ................................................................................. 30

CERTIFICATE OF COMPLIANCE...................................................... 32

CERTIFICATE OF SERVICE.............................................................. 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*14 Penn Plaza LLC v. Pyett,*
 556 U.S. 247 (2009)..................................................................27

*Allied-Bruce Terminix Cos. v. Dobson,*
 513 U.S. 265 (1995)...........................................................22, 28

*Am. Tobacco Co. v. Patterson,*
 456 U.S. 63 (1982)...................................................................24

*AT&T Mobility LLC v. Concepcion,*
 563 U.S. 333 (2011)...........................................................22, 24

*Bragdon v. Abbott,*
 524 U.S. 624 (1998)...................................................................16

*Circuit City Stores, Inc. v. Adams,*
 532 U.S. 105 (2001)........................................................22, 27, 28

*CompuCredit Corp. v. Greenwood,*
 565 U.S. 95 (2012).....................................................................24

*Cornelius v. CVS Pharmacy Inc.,*
 __ F.4th __, 2025 WL 980309 (3d Cir. Apr. 2, 2025) .........................17

*Epic Sys. Corp. v. Lewis,*
 584 U.S. 497 (2018)........................................................21, 24, 26

*Lackey v. Stinnie,*
 145 S. Ct. 659 (2025)..................................................................6

*Lamps Plus, Inc. v. Varela,*
 587 U.S. 176 (2019)...................................................................27

*Luera v. M/V Alberta,*
 635 F.3d 181 (5th Cir. 2011).........................................................15

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Mera v. SA Hosp. Grp., LLC,*
675 F. Supp. 3d 442 (S.D.N.Y. 2023)...................................... 10, 11, 25

*Milner v. Dep't of Navy,*
562 U.S. 562 (2011)....................................................................17

*Morse v. Republican Party of Va.,*
517 U.S. 186 (1996)....................................................................12

*Olivieri v. Stifel, Nicolaus & Co.,*
112 F.4th 74 (2d Cir. 2024)........................................................17

*United States ex rel. Polansky v. Exec. Health Res., Inc.,*
599 U.S. 419 (2023)....................................................................10

*Quituizaca v. Garland,*
52 F.4th 103 (2d Cir. 2022)........................................................10

*Republic of Sudan v. Harrison,*
587 U.S. 1 (2019)........................................................................10

*Samantar v. Yousuf,*
560 U.S. 305 (2010)....................................................................12

*Seife v. U.S. Food & Drug Admin.,*
43 F.4th 231 (2d Cir. 2022)..........................................................7

*Slack v. McDaniel,*
529 U.S. 473 (2000)....................................................................13

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
559 U.S. 662 (2010)....................................................................26

*TRW Inc. v. Andrews,*
534 U.S. 19 (2001)........................................................................7

*United Mine Workers of America v. Gibbs,*
383 U.S. 715 (1966)......................................................... 12, 13, 15

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States Forest Serv. v. Cowpasture River Pres. Ass'n,*
590 U.S. 604 (2020)................................................................15

*Utility Air Regul. Grp. v. E.P.A.,*
573 U.S. 302 (2014)...............................................................22

*Whitman v. Am. Trucking Ass'ns,*
531 U.S. 457 (2001)...............................................................27

*Yost v. Everyrealm, Inc.,*
657 F. Supp. 3d 563 (S.D.N.Y. 2023)...................................25

**Constitutional Provisions, Statutes, and Rules**

U.S. Const. art. III................................................... 4, 11, 12

Federal Arbitration Act,
9 U.S.C. §§ 1 *et seq.*............................................................... 1

9 U.S.C. § 1...........................................................................22

9 U.S.C. § 2................................................................ 21, 23, 24

9 U.S.C. § 4...........................................................................15

28 U.S.C. § 1441 .................................................................. 11

Ending Forced Arbitration of Sexual Assault and Sexual
Harassment Act of 2021, Pub. L. No. 117-90, 136 Stat. 26
(2022), codified at 9 U.S.C. §§ 401-02........................ *passim*

9 U.S.C. § 401....................................................................2, 13

9 U.S.C. § 402.................................................................. *passim*

Fed. R. App. P. 29................................................................. 1

**Other Authorities**

168 Cong. Rec. S625 (2022).......................................... 5, 19, 20

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Case*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/case ...................................................... 11

David Sherwyn, Samuel Estreicher, & Michael Heise, *Assessing the Case for Employment Arbitration: A New Path for Empirical Research*, 57 Stan. L. Rev. 1557 (2005) .............. 29

H.R. Rep. No. 117-234 (2022) ......................................................... 18, 19

Lewis L. Maltby, *Private Justice: Employment Arbitration and Civil Rights*, 30 Colum. Hum. Rts. L. Rev. 29 (1998) ................. 29

Michael Delikat & Morris M. Kleiner, *An Empirical Study of Dispute Resolution Mechanisms: Where Do Plaintiffs Better Vindicate Their Rights?*, 58 Disp. Resol. J. 56 (Nov. 2003-Jan. 2004) .................................................................... 29

Nam D. Pham, Ph.D. & Mary Donovan, *Fairer, Faster, Better III: An Empirical Assessment of Consumer and Employment Arbitration*, NDP Analytics (Mar. 2022), https://bit.ly/3yiU23A ..................................................... 2, 29

Nat'l Workrights Inst., *Employment Arbitration: What Does the Data Show?* (2004), https://bit.ly/3IVddnP .................................. 29

Stephen J. Ware, *The Centrist Case for Enforcing Adhesive Arbitration Agreements*, 23 Harv. Negotiation L. Rev. 29 (2017) ....................................................................... 30

Theodore J. St. Antoine, *Labor and Employment Arbitration Today: Mid-Life Crisis or New Golden Age?*, 32 Ohio St. J. on Disp. Resol. 1 (2017) .................................................. 29

## INTEREST OF *AMICUS CURIAE*[1]

The Chamber of Commerce of the United States of America is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community, such as the enforceability of arbitration agreements and interpretation of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*

Many of the Chamber's members and affiliates regularly enter into arbitration agreements with their customers and workers. Arbitration allows them to resolve any disputes that may arise promptly, efficiently, and fairly, while avoiding the high costs and delay associated with

---

[1] No counsel for a party authored this brief in whole or in part, and no person or entity, aside from *amicus curiae*, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E). All parties consented to the filing of this brief.

litigation in court. Indeed, the Chamber's Institute for Legal Reform has published research about the benefits of arbitration in addressing workplace and consumer disputes.[2] In reliance on the legislative policy embodied in the FAA and the U.S. Supreme Court's consistent affirmation of the legal protections that the FAA provides for arbitration agreements, the Chamber's members and affiliates have structured millions of contractual relationships to include arbitration agreements.

When Congress enacted the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA), Pub. L. No. 117-90, 136 Stat. 26 (2022) (codified at 9 U.S.C. §§ 401-02), it permitted individuals to decline to arbitrate claims relating to a sexual-assault or sexual-harassment dispute. The Chamber abhors sexual assault and sexual harassment, and respects Congress's decision to allow individuals bringing such claims to choose a judicial forum. Although some of these individuals may prefer the privacy and speed of arbitration for adjudicating their sexual-assault or sexual-harassment claims, others

---

[2] *See* Nam D. Pham, Ph.D. & Mary Donovan, *Fairer, Faster, Better III: An Empirical Assessment of Consumer and Employment Arbitration*, NDP Analytics (Mar. 2022), https://bit.ly/3yiU23A.

may prefer the formality of the courtroom and the public trial by jury that the court system offers.

But the district court misread the EFAA to eliminate arbitration for all claims brought in a civil action that includes a sexual-assault or sexual-harassment claim, even claims wholly unrelated to the sexual-assault or sexual-harassment dispute. That decision undermines the enforceability of arbitration agreements for those unrelated claims and would deprive businesses and claimants alike of the mutual benefits of arbitration. The Chamber therefore has a strong interest in this case and in reversal of the decision below.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The FAA embodies a strong federal policy favoring the enforcement of arbitration agreements. In 2022, Congress enacted the EFAA to carve out a limited exception to that pro-arbitration policy for disputes involving sexual assault or sexual harassment. 9 U.S.C. § 402(a). That legislation enjoyed strong bipartisan support. That is because Congress drafted the exception to allow claimants alleging sexual assault or sexual harassment to choose to pursue their claims in a public judicial forum,

3

but otherwise left in place the FAA's requirement that arbitration agreements must be enforced.

The district court, however, misconstrued the EFAA to open a massive loophole in arbitration agreements protected by the FAA. The court held that so long as a plaintiff alleges a sexual-assault or sexual-harassment claim, then each and every other claim packaged in the same lawsuit—no matter how unrelated—is exempt from arbitration. But under the plain language of the EFAA, it is not enough that the plaintiff "alleg[es] conduct constituting a sexual harassment dispute or sexual assault dispute." 9 U.S.C. § 402(a). The EFAA limits its exception to arbitration to a "case" that "*relates to* the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a) (emphasis added).

The district court's interpretation reads the "relates to" qualifying language out of the statute. And the court ignored the familiar legal test for when claims in a civil action are part of the same "case," as that word is used in Article III and precedents interpreting it—a meaning adopted by the EFAA's use of the term "case." Courts consistently recognize that a "case" consists of claims arising out of a common nucleus of operative

4

facts. The district court's approach improperly treats disparate, unrelated claims as part of the same "case."

While the plain language of the EFAA is clear, the law's legislative history makes the point indisputable. Congress debated this precise issue in enacting the EFAA; it concluded that courts should not take "unrelated claims out of the arbitration contract." *E.g.*, 168 Cong. Rec. S625 (2022) (statement of Sen. Graham). Yet that is precisely what the district court did.

Moreover, by reading the EFAA to allow unscrupulous plaintiffs' counsel to tack on a sexual-harassment claim to exempt an unrelated claim from arbitration, the district court created a gaping hole in the FAA. Plaintiffs' lawyers will be encouraged to game the system to circumvent the enforcement of employment and consumer arbitration agreements. Nothing in the EFAA compels the district court's misreading, which will deprive businesses, workers, and consumers of the mutual benefits of arbitration.

In sum, although the EFAA gives sexual-assault and sexual-harassment survivors a choice between court and arbitration, nothing in the EFAA's text or legislative history entitles litigants to invalidate

5

application of binding arbitration agreements to unrelated claims. The Court therefore should reverse the district court's order.

## I. The District Court Misinterpreted the EFAA to Abrogate Agreements To Arbitrate Claims Unrelated to a Sexual-Harassment or Sexual-Assault Dispute.

The district court construed the EFAA—which amends the FAA— to invalidate an arbitration agreement with respect to all claims asserted in a civil action whenever the plaintiff includes a sexual-harassment or assault dispute, even when that dispute is unrelated to the rest of the action. That reading cannot be squared with the EFAA's plain language, its legislative history, or Supreme Court precedent about how to interpret the FAA.

### A. Under the EFAA's plain language, only claims that relate to sexual assault or sexual harassment may proceed in court.

"When interpreting a statute," courts "begin with the text." *Lackey v. Stinnie*, 145 S. Ct. 659, 666 (2025). Here, the EFAA specifies that, "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and *relates to* the sexual assault dispute or the sexual harassment dispute." 9 U.S.C.

§ 402(a) (emphasis added). Seizing upon the word "case"—and expanding it to mean "a civil action"—the district court construed this language as exempting from arbitration all claims in an action, even if unrelated to the sexual-assault or sexual-harassment dispute. *See* SPA-28.

The district court's approach runs afoul of the plain language of the EFAA for two reasons. First, that interpretation reads the "relates to" qualifying language out of the statute, in violation of the rule against surplusage. Second, it ignores the settled legal meaning of "case."

> **1.      The district court's interpretation is contrary to the EFAA's plain language and renders the EFAA's "relates to" language a surplusage.**

The Supreme Court has reiterated that courts should interpret statutes so that "no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001); *see also*, *e.g.*, *Seife v. U.S. Food & Drug Admin.*, 43 F.4th 231, 239 (2d Cir. 2022) (explaining that courts construing a statute "should give effect, if possible, to every clause and word, with no provision rendered superfluous" (cleaned up)).

The EFAA states that "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute," an

7

arbitration agreement is not enforceable "with respect to a case which is filed under Federal, Tribal, or State law *and* relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C.A. § 402(a) (emphasis added). The EFAA thus prescribes three conditions that must be satisfied for a plaintiff to elect to avoid arbitration:

1. the plaintiff must "alleg[e] conduct constituting a sexual harassment dispute or sexual assault dispute";

2. the case must be "filed under Federal, Tribal, or State law"; and

3. the case must "relate[] to the sexual assault dispute or the sexual harassment dispute."

9 U.S.C. § 402(a).

The district court's interpretation reads the final requirement out of the statute. The court recognized that "the litigant must allege 'conduct constituting a sexual harassment dispute or sexual assault dispute,'" and that even "[i]f that threshold requirement is satisfied," the case must also be "filed under Federal, Tribal, or State Law" and "'relate[] to the sexual assault dispute or the sexual harassment dispute.'" SPA-27 (quoting 9 U.S.C. § 402(a)). But the court concluded that if the plaintiff alleges such

8

a dispute, the "pre-arbitration agreement is invalid and unenforceable with respect to the *entire case*"—by which it meant all claims joined in the same civil action. SPA-28 (emphasis added). In other words, no matter what claims are asserted if a plaintiff alleges sexual assault or sexual harassment, every claim packaged with it—breach-of-contract, wage-and-hour, wrongful-termination, or even antitrust claims— becomes exempt from arbitration, even if wholly unrelated to the sexual-assault or sexual-harassment dispute.

But that approach renders meaningless the EFAA's third requirement—that "the case . . . *relates to* the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a). The court improperly assumed that a plaintiff who satisfies the first requirement of alleging conduct constituting such a dispute automatically satisfies the third ("relates to") requirement. Indeed, under the district court's approach, the "relates to" qualifying language could be simply deleted from the EFAA, because any time a plaintiff "alleg[e] conduct constituting a sexual harassment dispute or sexual assault dispute," the arbitration agreement would be unenforceable as to any "case filed under Federal, Tribal, or State law."*Id.*

9

To be sure, the district court paid lip service to the "relates to" requirement by suggesting that it is met if claims relate to the "employment relationship." SPA-52. But that approach ignores the statutory text: the "relat[ion]" must be "to the sexual harassment dispute or the sexual assault dispute." 9 U.S.C. § 402(a). To give effect to the EFAA's "relates to" requirement, any claim in a civil action that does not "relate[] to" the sexual-harassment or assault dispute must remain subject to arbitration. Otherwise the last clause of the statutory test would be transformed into meaningless surplusage—the precise result that the Supreme Court and this Court repeatedly reject. *See, e.g.*, *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023); *Republic of Sudan v. Harrison*, 587 U.S. 1, 12 (2019); *Quituizaca v. Garland*, 52 F.4th 103, 111 (2d Cir. 2022).

Indeed, a district court in this circuit recently agreed, implicitly rejecting the conclusion reached by the court below. In *Mera v. SA Hospitality Group, LLC*, the court considered whether the EFAA exempted claims for unpaid wages from arbitration because the plaintiff also asserted a sexual-harassment claim. 675 F. Supp. 3d 442, 444 (S.D.N.Y. 2023). Based on the EFAA's "relates to" language, the court

10

concluded that only claims "that relate to the sexual harassment dispute" are carved out from arbitration. *Id.* at 447. "To hold otherwise," the court reasoned, "would permit a plaintiff to elude a binding arbitration agreement with respect to *wholly unrelated claims* affecting a broad group of individuals having nothing to do with the particular sexual harassment affecting the plaintiff alone." *Id.* (emphasis added).

### 2. The district court improperly construed the term "case" without considering that term's settled legal meaning.

The district court also erred by misconstruing the word "case" in the EFAA to refer to the "legal proceeding as an undivided whole." SPA-28 (quotation omitted). To be sure, the word "case" is sometimes used colloquially to mean "a suit or action in law or equity." *E.g.*, *Case*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/case. But Congress typically refers to an "action" or "civil action" to refer to the entirety of a lawsuit. *See, e.g.*, 28 U.S.C. § 1441 (providing for removal of a "civil action").

Moreover, the term "case" has a settled legal meaning. Article III of the Constitution states that "[t]he judicial Power shall extend to," among other things, "all *Cases*, in Law or Equity, arising under this

11

Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." U.S. Const. art. III, § 2, cl. 1 (emphasis added). In enacting the EFAA—like any other law—"Congress is understood to legislate against a background of [legal] principles," *Samantar v. Yousuf*, 560 U.S. 305, 320 n.13 (2010) (quotation omitted), including Article III, *see, e.g.*, *Morse v. Republican Party of Va.*, 517 U.S. 186, 220-21 (1996) ("It would be a mischievous and unwise rule that Congress cannot rely on our construction of constitutional language" by using the "same word as" a "constitutional provision[]" in a "statutory text[.]").

In *United Mine Workers of America v. Gibbs*, the Supreme Court, in analyzing the permissible reach of pendent federal jurisdiction, explained that state and federal claims are part of "one constitutional 'case'" only if they "derive from a common nucleus of operative facts." 383 U.S. 715, 725 (1966). Thus, multiple causes of action comprise a single "case" in the Article III sense if they arise from a common nucleus of operative fact. But a single civil action in which the plaintiff asserts disparate state and federal claims do not constitute the same "case."

12

When "Congress ha[s] before it the meaning" an applicable decision gave "to the words it selected," a court must give the words "the meaning ascribed it" by that decision. *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Under this principle, the definition of "case" from *Gibbs*—referring to claims arising from a common nucleus of operative fact—must be given to the word "case" in the EFAA.

That conclusion is especially appropriate because the Court in *Gibbs* was addressing the very issue that was before Congress in enacting the EFAA: how to determine when claims are sufficiently related so that they should be subject to the same treatment. In *Gibbs*, the question was whether a claim otherwise beyond a federal court's subject-matter jurisdiction nonetheless may remain in federal court because it is related to a claim properly before the federal court. Here, the question is whether a claim is sufficiently related to the sexual-assault or sexual-harassment claim so that the EFAA's exception to the FAA should apply even though the claim in question is not a sexual-assault or sexual-harassment claim as defined in the EFAA. *See* 9 U.S.C. §§ 401(3)-(4).

By providing that the exemption for arbitration applies only to "a case which . . . *relates to* the sexual assault dispute or the sexual

13

harassment dispute," 9 U.S.C. § 402(a), Congress limited the exemption to the portion of a civil action that has a nexus—that is, shares a common nucleus of operative facts—with the sexual-assault or sexual-harassment dispute.

By contrast, under the district court's "employment-related" approach, the only inquiry is whether the entire civil action "'relates'" to the "employment relationship." SPA-52. As noted above, expanding the inquiry to the "employment relationship" as a whole contradicts the plain language of the EFAA, which specifically requires that the case "relate[] to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a). But even if the inquiry were refocused to ask whether the entire civil action (*i.e.*, the "case," in the district court's view) "relates to" the sexual-assault or sexual-harassment dispute, that standardless inquiry would be unworkable.

Consider a lawsuit asserting claims arising out of both alleged sexual harassment and either alleged misclassification of hourly workers as salaried employees or failure to make payments required by the employment contract. How is a court to determine, in a case asserting a grab-bag of claims, whether the entire civil action sufficiently "relates to"

14

the sexual-harassment dispute? The district court has no convincing answer. The court suggested that there is a nexus if the sexual-harassment claims are "not immaterial" and "part of the employment relationship from which all of her claims stem," SPA-52, but this approach would effectively rewrite the "relates to" requirement and frustrate Congress's aim of ensuring arbitration of unrelated disputes. The familiar meaning of "case" under *Gibbs* avoids the district court's line-drawing problem and ensures that disputes with a nexus to sexual assault or harassment—but not other claims—remain in court.

Moreover, in at least one other instance in the FAA, Congress used the word "case" to refer to only a subset of an action. Specifically, Section 4 of the FAA authorizes a jury trial to decide arbitrability "except in cases of admiralty." 9 U.S.C. § 4. Yet a single civil action may include admiralty and non-admiralty claims. *See, e.g.*, *Luera v. M/V Alberta*, 635 F.3d 181, 190-92 (5th Cir. 2011). Thus, Congress's similar use of the word "case" in the EFAA to amend the FAA is consistent with Congress's usage in the same statute. As the Supreme Court has reiterated, "we do 'not lightly assume that Congress silently attaches different meanings to the same term in the same . . . statute.'" *United States Forest Serv. v. Cowpasture*

15

*River Pres. Ass'n*, 590 U.S. 604, 614 (2020) (quoting *Azar v. Allina Health Servs.*, 587 U.S. 566, 574 (2019)). And "Congress' repetition" of a "term" in an amendment "carries the implication that Congress intended the term to be construed" the same way. *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

Finally, the district court wrongly assumed that "case" in the EFAA must mean the entire action (and not particular claims) because Congress used the word "claim" in a separate provision to explain when the EFAA went into effect. SPA-28. Specifically, Congress provided: "This Act . . . shall apply with respect to any dispute or *claim* that arises or accrues on or after the date of enactment of this Act." Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022) (emphasis added). Congress of course knows the difference between a claim and a civil action. But the fact that Congress used "claim" in this provision sheds no light on the meaning of "case."

The point of Section 3 of the EFAA was to prevent it from having retroactive effect. Congress had to use the term "claim" because it is a claim, not a case, that "arises or accrues" on a certain date. *Id.* Claims that share a common nucleus of operative fact—and are therefore part of

16

the same "case"—sometimes arise or accrue on different dates. For example, sexual-harassment and retaliation claims can arise from separate incidents. *See, e.g.*, *Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 87-88 (2d Cir. 2024); *see also Cornelius v. CVS Pharmacy Inc.*, __ F.4th __, 2025 WL 980309, at *5 (3d Cir. Apr. 2, 2025).

## B. The legislative history of the EFAA contradicts the district court's interpretation.

The district court's reading of the EFAA to exempt wholly unrelated claims from arbitration so long as they are packaged with a sexual-harassment or assault claim cannot be squared with the legislative history. Even if the EFAA's plain language did not foreclose the district court's interpretation—which it does—"clear evidence of congressional intent may illuminate ambiguous text." *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011). Here, the evidence of congressional intent is overwhelming.

To begin with, in explaining the justification for the EFAA, the House Judiciary Committee report focused on the need for a judicial forum for claims relating to sexual assault or sexual harassment—not the need to prevent arbitration of wholly unrelated claims. For example, the House Committee report emphasized that "suit[s]" by "an employee"

17

who has been "assaulted[] or harassed at work" or a "consumer" who has been "assaulted at a business"—thus referring to claims related to the assault or harassment—should be permitted access to a "court of law." H.R. Rep. No. 117-234, at 3 (2022). Otherwise, the Committee report warned, the privacy of arbitration proceedings would "prevent[] victims from sharing their stories," which would "allow[] for the growth of office cultures that ignore harassment and retaliate against those who report it, prevent future victims from being warned about dangerous companies and individuals, and create incentives for the corporate protection of rapists and other serial harassers." *Id.* at 4.

None of these consequences result from allowing arbitration of unrelated claims, such as an employee's separate complaint about the misclassification of categories of workers as salaried rather than hourly, or a consumer's separate complaint that a product is defective or costs too much. And when the Committee report discussed suits inappropriately compelled to arbitration, the examples exclusively consisted of claims arising directly out of the alleged assault or harassment, such as customers' "allegations of sexual assault" against a "massage chain," *id.* at 8, and employees' claims of "'sexual coercion' . . .

18

in the workplace" against a retailer, *id.* at 10. Not once did the report discuss allowing unrelated claims to avoid arbitration.

The debate in the Senate shortly before passage of the EFAA confirms that the senators voting for the EFAA understood its language as *not* exempting unrelated claims from arbitration. Specifically, Senator Joni Ernst reported that she, "the majority leader[,]" and a "sponsor of th[e] bill" had "agreed to come to the floor" to make "the congressional intent" of the EFAA "crystal clear." 168 Cong. Rec. at S625. Because "this bill should not be the catalyst for destroying predispute arbitration agreements in all employment matters," they "agreed" that "harassment and assault claims" cannot be "joined to an employment claim" to exclude them from arbitration "without a key nexus." *Id.* In other words, "[t]he language of this bill should be narrowly interpreted. It should not be used as a mechanism to move employment claims that are unrelated to these important issues" of "[h]arassment and assault allegations" "out of the current system." *Id.*

Senator Lindsay Graham, a sponsor of the bill, took to the floor to "agree with" Senator Ernst and to emphasize that the EFAA is not "intend[ed] to take unrelated claims out of the contract [for arbitration]."

19

*Id.* "So if you have got an hour-and-wage dispute with the employer, you make a sexual harassment, sexual assault claim, the hour-and-wage dispute stays under arbitration unless it is related [to the sexual-harassment or assault claim]. That is the goal [of the EFAA]." *Id.*

Senator Kristin Gillibrand agreed, explaining that "[t]he bill plainly reads, which is very relevant to Senator Ernst's concerns, that only disputes that relate to sexual assault or harassment conduct can escape the forced arbitration clauses." *Id.* at S627. She added "'[t]hat relate to' is in the text" of the bill. *Id.* She then explained that "it is essential that all the claims related to the sexual assault or harassment can be adjudicated at one time," because "[w]e don't want to have to make a sexual assault or harassment victim relive that experience in multiple jurisdictions. So we want to be able to deal with all the harassment and assault-related claims in one go[]. *But, again, if those aren't part of it, then this bill does not apply to it.*" *Id.* (emphasis added).

Senator Richard Durbin also explained that the EFAA does not permit Senator Ernst's concern that litigants would "game the system" by tacking on "claims that are 'unrelated' to allegations of sexual harassment or sexual assault." *Id.* at S625-26. "The bill is clear on this

20

point," he explained. *Id.* "Under the bill, if the survivor so chooses, no predispute arbitration agreement shall be valid or enforceable 'with respect to a case which is filed under federal, tribal or state law *and relates to the sexual assault dispute or the sexual harassment dispute.*' That resolves the Senator's concern." *Id.* (emphasis added).

In sum, the EFAA's legislative history reveals that Congress's intent was not, as the district court supposed, to allow claims that are unrelated to a sexual-assault or sexual-harassment dispute to proceed outside of arbitration.

**C.    The ruling below contravenes Supreme Court precedent regarding the FAA and frustrates the FAA's and EFAA's purposes.**

The district court's interpretation also cannot be squared with Supreme Court decisions construing the FAA (which the EFAA amended). As the Supreme Court has reiterated, in declaring arbitration agreements "valid, irrevocable, and enforceable," 9 U.S.C. § 2, Congress "directed courts to abandon their hostility" to arbitration and "establishe[d] 'a liberal federal policy favoring arbitration.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also, e.g.,*

21

*AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 345-46 (2011) (citing cases).

*First,* because it amends the FAA, the EFAA must be interpreted in light of "both the specific context in which . . . language is used and the broader context of the statute as a whole." *Utility Air Regul. Grp. v. E.P.A.,* 573 U.S. 302, 321 (2014) (quotation omitted). The Supreme Court explained in construing another "exclusion provision" in the FAA (section 1, 9 U.S.C. § 1, addressing certain transportation workers), the exclusion must be construed "with reference to the statutory context . . . and in a manner consistent with the FAA's purpose" of promoting arbitration. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 118 (2001). The Court thus held that Section 1's "exclusion provision" must "be afforded a *narrow construction*" because it "is contained in a statute that 'seeks broadly to overcome judicial hostility to arbitration agreements[.]'" *Id.* (quoting *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 272-73 (1995)) (emphasis added).

The approach should apply to the EFAA. It, too, should be construed in light of the FAA's overall purpose of "promot[ing] arbitration." *Concepcion,* 563 U.S. at 345. An interpretation of the EFAA

22

that renders employment arbitration agreements broadly unenforceable frustrates that purpose because it undermines the point of agreeing to arbitrate in the first place. And that is what the district court's interpretation does—it makes it easy for plaintiffs to invalidate any employment arbitration agreement by adding a sexual-harassment claim to any complaint about an unrelated dispute.

The most natural way to harmonize Section 2 of the FAA and the EFAA is to allow plaintiffs with a sexual-harassment or assault dispute to elect to bring all claims arising out of the common nucleus of operative fact (and thus constituting the same "case") in court under the EFAA, while requiring arbitration of all *unrelated* claims under Section 2. That approach fulfills the purpose of both statutory provisions.

That approach also avoids construing the EFAA to require that similarly situated individuals be treated differently. Consider two workers who entered into arbitration agreements with identical wage-and-hour claims. Under the district court's approach, if one of them can assert a sexual-harassment claim, that worker may elect to bring that wage-and-hour in court (along with all manner of other unrelated claims). But the other worker with the identical wage-and-hour claim

23

cannot. It would be odd to assume that Congress would have intended such an irrational distinction. Indeed, "[s]tatutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible." *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 72 (1982). And making it unpredictable whether claims unrelated to sexual harassment or sexual assault can be subject to arbitration is hardly consistent with the FAA's goal of "promot[ing] arbitration." *Concepcion*, 563 U.S. at 345.

*Second*, the Supreme Court also has explained that the FAA's protections of the enforceability of arbitration agreements can be overridden only by a "contrary congressional command." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quotation omitted). But the Court has cautioned that the contrary command must be "clear and manifest." *Epic*, 584 U.S. at 510 (quotation omitted). Indeed, the Court has rejected numerous attempts to argue that other laws override Section 2 of the FAA in "the absence of any specific statutory discussion of arbitration." *Id.* at 517 (citing cases).

Here, Congress unmistakably chose to allow plaintiffs "alleging conduct constituting a sexual harassment dispute or sexual assault dispute" to "elect[]" not to arbitrate that "dispute" under a "predispute

24

arbitration agreement." 9 U.S.C. § 402(a). But the EFAA does not include a "clear and manifest" command to adopt the approach below—which exempts wholly unrelated disputes from arbitration as well. Indeed, as discussed above, *see* pages 6-17, as at least one district court has recognized, *Mera*, 675 F. Supp. 3d at 447, and as every member of Congress to consider the issue has agreed, *see* pages 17-21, *supra*, the EFAA's language does not compel that result. And the pro-arbitration purpose of the FAA "is not served" if "non-sexual harassment [and assault] claims," may be "litigated in court, in the face of a binding arbitration agreement," merely because such a claim has been included as part of a complaint asserting unrelated claims. *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 586 (S.D.N.Y. 2023).

The district court's approach would encourage unscrupulous lawyers seeking to bring lawsuits in court to include unrelated sexual-harassment claims in order to evade enforcement of arbitration agreements. For example, consider a lawyer seeking to challenge a business's misclassification of its workers or sale of a defective product to customers. In the hope of extracting a higher settlement, the lawyer may prefer to sue in court precisely to *avoid* the "benefits of private dispute

25

resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators[.]" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010). If the business and its workers or customers have agreed to arbitration, the district court's approach gives that lawyer a powerful incentive to plead an unrelated sexual-harassment claim of little to no merit. Thus, although the bulk of a complaint might seek relief for (say) failure to compensate employees for time donning and doffing protective gear, the plaintiff might, at his or her lawyer's behest, allege in passing that the plaintiff also experienced sexually harassing comments. Or a consumer bringing a class action arguing that visitors to a retailer's website are entitled to statutory damages because its cookie policy violates a state privacy law might throw in an allegation of sexual harassment by a store salesperson, deliveryperson, or call-center employee.

Allowing workers and consumers to evade enforcement of arbitration agreements through this expedient would be a sea change in employment and consumer litigation. But the EFAA does not "clear[ly] and manifest[ly]" command that result, *Epic*, 584 U.S. at 510 (quotation omitted), and "Congress . . . does not alter the fundamental details of a

statutory scheme in vague terms or ancillary provisions." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

## II. The District Court's Misreading of the EFAA Harms Businesses, Workers, and Consumers.

Under the EFAA as properly understood, plaintiffs should be entitled to choose to litigate their sexual-assault or sexual-harassment claims in court while any unrelated claims are arbitrated. By diverting those unrelated claims into court as well, the district court's misreading of the FAA would eliminate the benefits of arbitration for those claims— harming all parties.

That result would deprive businesses as well as claimants of the "real benefits" to the "enforcement of arbitration provisions," *Adams*, 532 U.S. at 122-23, which include "'lower costs [and] greater efficiency and speed,'" *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 185 (2019) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010)); *see also, e.g., 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257 (2009) ("Parties generally favor arbitration precisely because of the economics of dispute resolution.").

These advantages extend to agreements between businesses and workers. *See Adams*, 532 U.S. at 123 (rejecting the "supposition that the

27

advantages of the arbitration process somehow disappear when transferred to the employment context"). The lower costs of arbitration compared to litigation "may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts." *Id.*

Arbitration's advantages are also important to consumers. As then-Justice Breyer has explained, eliminating arbitration would "leav[e] the typical consumer who has only a small damages claim (who seeks, say, the value of only a defective refrigerator or television set) without any remedy but a court remedy, the costs and delays of which could eat up the value of an eventual small recovery." *Allied-Bruce*, 513 U.S. at 281.

Empirical research confirms those observations. Even setting aside the lower cost of alternative dispute resolution compared to litigation, workers and consumers benefit from arbitration. A recent study of arbitrations initiated by workers and consumers between 2014 and 2021 found that the average consumer dispute was resolved almost four months faster and employment dispute about two months faster than such disputes in court—findings that were consistent with prior

28

research.[3] Further, the study found that consumers were 40 percent more likely to win in arbitration than in court, and employees fared even better—they were about 3.5 times more likely to win in arbitration than in court.[4] The study also found that the median monetary award for consumers who prevailed in arbitration was over three times the median

---

[3] *See* Pham, *supra* , at 15 (reporting that average resolution for arbitration was approximately two months faster than litigation); *see also*, *e.g.*, Michael Delikat & Morris M. Kleiner, *An Empirical Study of Dispute Resolution Mechanisms: Where Do Plaintiffs Better Vindicate Their Rights?*, 58 Disp. Resol. J. 56, 58 (Nov. 2003–Jan. 2004) (reporting findings that arbitration was 33% faster than analogous litigation); David Sherwyn, Samuel Estreicher, & Michael Heise, *Assessing the Case for Employment Arbitration: A New Path for Empirical Research*, 57 Stan. L. Rev. 1557, 1573 (2005) (collecting studies reaching similar conclusions); Lewis L. Maltby, *Private Justice: Employment Arbitration and Civil Rights*, 30 Colum. Hum. Rts. L. Rev. 29, 55 (1998) (average resolution time for employment arbitration was less than half the average resolution time in court).

[4] Pham, *supra*, at 4-5, 12, 17 (surveying more than 25,000 employment arbitration cases and 260,000 employment litigation cases resolved between 2014 to 2021 and reporting a 37.7% win rate in arbitration versus 10.8% in litigation); *see also* Theodore J. St. Antoine, *Labor and Employment Arbitration Today: Mid-Life Crisis or New Golden Age?*, 32 Ohio St. J. on Disp. Resol. 1, 16 (2017) (arbitration is "favorable to employees as compared with court litigation"); Sherwyn, 57 Stan. L. Rev. at 1578 ("[T]here is no evidence that plaintiffs fare significantly better in litigation [than in arbitration]."); Nat'l Workrights Inst., *Employment Arbitration: What Does the Data Show?* (2004), https://bit.ly/3IVddnP (concluding that employees were more likely to win in arbitration than in court).

recovery by consumers who won in court, with employees who prevailed in arbitration obtaining over double the award that prevailing employees received from courts.[5]

Under the district court's misinterpretation of the EFAA, all of these benefits of arbitrating claims unrelated to sexual-assault or sexual-harassment disputes would be lost. And the increased costs of dispute resolution from the loss of arbitration would not be borne by businesses alone. Businesses would, in turn, pass on these litigation expenses to consumers (in the form of higher prices) and to workers (in the form of lower compensation).[6]

## CONCLUSION

The district court's judgment should be reversed.

---

[5] Pham, *supra,* at 13-14 (finding for prevailing consumers a median award of $20,356 in arbitration and $6,669 in court, and for prevailing employees, a median award of $142,332 in arbitration and $68,956 in court).

[6] Stephen J. Ware, *The Centrist Case for Enforcing Adhesive Arbitration Agreements*, 23 Harv. Negotiation L. Rev. 29, 85, 113 (2017) ("[S]tandard economic analysis suggests that enforcement of adhesive consumer arbitration agreements tends over time to lower the prices of the goods and services consumers buy.")

Dated: April 3, 2025

Respectfully submitted,

*/s/ Andrew J. Pincus*

Tara S. Morrissey
Jonathan D. Urick
U.S. CHAMBER LITIGATION CENTER
 *1615 H Street, N.W.*
 *Washington, DC 20062*
 *(202) 463-5537*

Andrew J. Pincus
Archis A. Parasharami
Kevin S. Ranlett
MAYER BROWN LLP
 *1999 K Street, NW*
 *Washington, DC 20006-1101*
 *(202) 263-3000*

Gabrielle Levin
MAYER BROWN LLP
 *1221 Avenue of the Americas*
 *New York, NY 10020-1001*
 *(212) 506-2500*

*Counsel for* Amicus Curiae *the Chamber of Commerce of the United States of America*

31

# CERTIFICATE OF COMPLIANCE

I, Andrew J. Pincus, counsel for *amici curiae,* pursuant to Fed. R. App. P. 32(g), that the brief is proportionally spaced, has a typeface of 14 points or more, and contains 6,022 words, exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f).

Dated: April 3, 2025         Respectfully submitted,

*/s/ Andrew J. Pincus*
Andrew J. Pincus

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Second Circuit using the CM/ECF system. I certify that service will be accomplished by the CM/ECF system, which will send notice to all users registered with CM/ECF.

Dated: April 3, 2025          Respectfully submitted,

/s/ *Andrew J. Pincus*
Andrew J. Pincus