# 24-3223-CV

## United States Court of Appeals

*for the*

## Second Circuit

SILVIA DIAZ-ROA,

*Plaintiff-Appellee,*

– v. –

HERMES LAW, P.C., SYZYGY LEGAL TECH, INC., doing business as
ClaimDeck, DWAYNE HERMES, ANDREA HERMES,

*Defendants-Appellants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLEE

VALDI LICUL
WIGDOR LLP
*Attorneys for Plaintiff-Appellee*
85 Fifth Avenue, 5th Floor
New York, New York 10003
(212) 257-6800

CP COUNSEL PRESS    (800) 4-APPEAL • (380257)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ........................................................1

QUESTIONS PRESENTED..............................................................2

STATEMENT OF THE CASE...........................................................2

    I.     BACKGROUND................................................................2

    II.    THE LAWSUITS AND ARBITRATION ..........................4

    III.   THE DISTRICT COURT'S DECISION ...........................7

SUMMARY OF ARGUMENT ........................................................9

ARGUMENT ...............................................................................11

    I.     STANDARD OF REVIEW .............................................11

    II.    THE EFAA ....................................................................11

         A.    The Statutory Language ...............................13

         B.    Defendants' Non-Textual Arguments.....................19

    III.   WAIVER .......................................................................25

CONCLUSION ............................................................................30

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Alness Am. Portland Cement Works v. Degnon Contracting Co.*,
   222 N.Y. 34 (1917) ................................................................27

*Baldwin v. TMPL Lexington LLC*,
   No. 23 Civ. 9899, 2024 WL 3862150 (S.D.N.Y. Aug. 19, 2024) ............... *passim*

*Bostock v. Clayton Cnty., Georgia*,
   590 U.S. 644 (2020) ................................................................13

*Brown v. Peregrine Enter., Inc.*,
   No. 22-2959, 2023 WL 8800728 (2d Cir. Dec. 20, 2023) ............................. 8, 25

*Cabintree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*,
   50 F.3d 388 (7th Cir. 1995) .......................................................27

*Carcich v. Rederi A/B Nordie*,
   389 F.2d 692 (2d Cir. 1968) ................................................... 26, 29

*Cath. Charities Bureau, Inc. v. Wis. Lab. & Indus. Review Comm'n*,
   145 S. Ct. 1583 (2025) .............................................................17

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) ................................................................21

*Coggins v. Cnty. of Nassau*,
   615 F. Supp. 2d 11 (E.D.N.Y. 2009) ................................................25

*Coinbase, Inc. v. Bielski*,
   599 U.S. 736 (2023) .................................................................6

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985) ................................................................21

*Delo v. Paul Taylor Dance Found., Inc.*,
   685 F. Supp. 3d 173 (2d Cir. 2023) ................................................17

*Diaz-Roa v. Hermes Law, P.C.*,
   757 F. Supp. 3d 498 (S.D.N.Y. 2024) ................................. 7, 8, 18, 28

*Disabled in Action of Metro N.Y. v. Hammons*,
   202 F.3d 110 (2000) ................................................................23

*Doctor's Assocs., Inc. v. Distajo*,
    66 F.3d 438 (2d Cir. 1995) ................................................................25

*Doe v. Second Street Corp.*,
    105 Cal. App. 5th 552 (Cal. Ct. App. 2d Dist. 2024) ..................... 20-21

*Erdman Co. v. Phoenix Land & Acquisition, LLC*,
    650 F.3d 1115 (8th Cir. 2011) ...........................................................26

*Gen. Dynamics Land Sys. v. Cline*,
    540 U.S. 581 (2004) ...........................................................................16

*Gill v. US Data Mgmt., LLC*,
    No. 2:24 Civ. 05255, 2024 WL 5402494 (C.D. Cal. Dec. 2, 2024) ....................22

*Granite Rock Co. v. Teamsters*,
    561 U.S. 287 (2010) ...........................................................................20

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.*,
    735 F. Supp. 581 (S.D.N.Y. 1990) ...................................................27

*Headley v. Tilghman*,
    53 F.3d 472 (2d Cir. 1995) ......................................................... 11, 25

*Johnson v. Everyrealm, Inc.*,
    657 F. Supp. 3d 535 (S.D.N.Y. 2023) ........................................ *passim*

*Kamco Supply Corp. v. On the Right Track, LLC*,
    149 A.D.3d 275 (2d Dep't 2017) .......................................................26

*KPMG LLP v. Cocchi*,
    565 U.S. 18 (2011) ....................................................................... 21, 22

*La. Stadium & Exposition Dist. v.*
*Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    626 F.3d 156 (2d Cir. 2010) ....................................................... 26, 28

*Lawrence v. NYC Med. Prac., P.C.*,
    No. 18 Civ. 8649, 2023 WL 4706126 (S.D.N.Y. July 21, 2023) ........................25

*Liu v. Miniso Depot CA, Inc.*,
    105 Cal. App. 5th 791 (Cal. Ct. App. 2d Dist. 2024),
    *review denied* (Dec. 31, 2024) ...........................................................24

*Memmer v. United Wholesale Mortg., LLC*,
    135 F.4th 398 (6th Cir. 2025) ............................................................15

*Mera v. SA Hosp. Grp., LLC*,
   675 F. Supp. 3d 442 (S.D.N.Y. 2023) ............................................. 6, 8, 14, 18, 19

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) ....................................................................11

*Morales v. Transworld Airlines*,
   504 U.S. 374 (1992)................................................................................19

*Morgan v. Sundance, Inc.*,
   596 U.S. 1708 (2022).................................................................... *passim*

*Moses v. New York Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ...................................................................11

*N.L.R.B. v. SW Gen., Inc.*,
   580 U.S. 288 (2017)................................................................................23

*Nat'l Found. for Cancer Rsch. v. A.G. Edwards & Sons, Inc.*,
   821 F.2d 772 (D.C. Cir. 1987)...............................................................27

*Newton v. LVMH Moet Hennessy Louis Vuitton, Inc.*,
   746 F. Supp. 3d 135 (S.D.N.Y. 2024) ...................................................17

*Olivieri v. Stifel, Nicolaus & Co., Inc.*,
   112 F.4th 74 (2d Cir. 2024) ........................................... 16, 17, 19, 20

*Oncale v. Sundowner Offshore Servs., Inc.*,
   523 U.S. 75 (1998)........................................................................... 23-24

*Patel v. Garland*,
   596 U.S. 328 (2022)................................................................................20

*Perez v. Ledesma*,
   401 U.S. 82 (1971)..................................................................................27

*Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.*,
   48 F.4th 603 (5th Cir. 2022) ...................................................................5

*PPG Indus., Inc. v. Webster Auto Parts, Inc.*,
   128 F.3d 103 (2d Cir. 1997) ...................................................................29

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 (1967)................................................................................26

*Royal Canin U.S.A., Inc. v. Wullschleger*,
   604 U.S. 22 (2025)..................................................................................14

iv

*Ruiz v. Butts Foods, L.P.*,
No. W2023-01053-COA-R3-CV, 2025 WL 1099966
(Tenn. Ct. App. Apr. 14, 2025)...................................................14

*Simmons v. Himmelreich*,
578 U.S. 621 (2016)....................................................................15

*St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Products Co., Inc.*,
969 F.2d 585 (7th Cir. 1992) .....................................................27

*Steinberg v. Capgemini Am., Inc.*,
No. 22-489, 2022 WL 3371323 (E.D. Pa. Aug. 16, 2022)....................21

*Tape & Techs., Inc. v. Davlyn Mfg. Co.*,
No. Civ.A.SA-04CA1150XR, 2005 WL 1071269 (W.D. Tex. May 6, 2005).......5

*Tech. in P'ship, Inc. v. Rudin*,
894 F. Supp. 2d 274 (S.D.N.Y. 2012), *aff'd*, 538 F. App'x 38 (2d Cir. 2013) ....28

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001).....................................................................17

*Turner v. Tesla, Inc.*,
686 F. Supp. 3d 917 (N.D. Cal. 2023) ......................................19

*U.S. v. Olano*,
507 U.S. 725 (1993)...................................................................25

*United Mine Workers v. Gibbs*,
383 U.S. 715 (1966)...................................................................14

*United States v. Bedi*,
15 F.4th 222 (2d Cir. 2021) .......................................................13

*Voest-Alpine Intern. Corp. v. Chase Manhattan Bank, N.A.*,
707 F.2d 680 (2d Cir. 1983) ......................................................27

*Wells Fargo Advisors, LLC v. Sappington*,
884 F.3d 392 (2d Cir. 2018) ......................................................11

## Statutes & Other Authorities:

9 U.S.C. § 16(a)(1)(C) ...................................................................9

9 U.S.C. § 2 ..................................................................................22

9 U.S.C. § 7 ............................................................................16

9 U.S.C. § 205 ................................................................. 15, 16

9 U.S.C. § 401(4) ..................................................................11

9 U.S.C. § 402 ........................................................................23

9 U.S.C. § 402(a) .......................................................... *passim*

9 U.S.C. § 409(a) ..................................................................19

28 U.S.C. § 2201 ......................................................................5

42 U.S.C. § 2000e ....................................................................5

C.P.L.R. 304(a) .....................................................................16

N.Y. Exec. Law § 290 ........................................................ 5, 18

Fed. R. Civ. P. 18(a) .............................................................14

N.Y. Lab. Law § 193 .......................................................... 5, 18

N.Y.C. Admin. Code § 8-101 ............................................. 5, 18

Pub. L. No. 117-90, § 3, 136 Stat. 26 (2022) .......................16

*Black's Law Dictionary* (11th ed. 2019) ..............................13

*Black's Law Dictionary* (12th ed. 2024) ..............................12

Ending Forced Arbitration in Sexual Assault
    and Sexual Harassment Act of 2021 ........................... *passim*

Federal Arbitration Act ........................................... *passim*

*Merriam-Webster* ........................................................ 13, 18

**PRELIMINARY STATEMENT**

Plaintiff-Appellee Silvia Diaz-Roa ("Diaz-Roa) sued her employers Hermes Law, P.C. ("Hermes"), Syzygy Legal Tech, Inc. (known as "ClaimDeck"), and related individuals (collectively "Defendants") for sexual harassment. She also asserted claims that Defendants unlawfully terminated her employment to prevent her from exercising previously issued ClaimDeck stock options. Defendants moved, *inter alia*, to compel arbitration based on a pre-dispute arbitration agreement that Diaz-Roa signed years earlier. The district court (Liman, J.) properly denied the motion based on the Ending Forced Arbitration in Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), which invalidates and renders unenforceable a pre-dispute arbitration agreement in sexual harassment cases. The district court held, as have numerous other courts, that the plain language of the EFAA invalidates the arbitration agreement with respect to the entire "case," and not merely those individual "claims" or causes of action that specifically relate to sexual harassment.

The district court also should have denied the motion to compel arbitration on the alternative ground that Defendants waived their arbitration rights. Shortly before Diaz-Roa filed this action, Hermes and ClaimDeck sued Diaz-Roa in Texas federal court - which they asserted had jurisdiction over the parties' dispute – and requested that the court issue declarations that they did not unlawfully terminate

1

Diaz-Roa's employment and that Diaz-Roa had no right to exercise her ClaimDeck stock options. By doing so, Defendants manifested a clear intention to have a court – not an arbitrator – resolve their disputes with Diaz-Roa, thus relinquishing their rights under the arbitration agreement.

## QUESTIONS PRESENTED

1.    Whether the district court properly denied Defendants' motion to compel arbitration under the EFAA because Diaz-Roa's case included claims related to a sexual harassment dispute.

2.    Whether the district court erred by refusing to find that Defendants waived their right to arbitrate by filing a lawsuit against Diaz-Roa raising the same claims they now contend should be compelled to arbitration.

## STATEMENT OF THE CASE

## I.    BACKGROUND

Diaz-Roa worked for Hermes, a law firm, from February 2017 to February 2024. A-22-38.[1] She started as an intern, A-22 ¶ 1, but eventually rose through the ranks to become Head of Product and Chief Operating Officer. *Id.* During her tenure, Diaz-Roa and Dwayne Hermes, her boss and supervisor, A-26 ¶ 25, came up with the idea for ClaimDeck, a computerized litigation management system. A-25 ¶ 23. In December 2020, because of Diaz-Roa's excellent performance,

---

[1] "A_" refers to the Appendix.

Defendants awarded Diaz-Roa options to purchase over 58,000 shares of ClaimDeck stock. A-29 ¶ 43 Diaz-Roa could not immediately exercise those options. *Id.* Rather, she had to wait three years for the options to vest. *Id.*

During her employment, Diaz-Roa was the victim of sexual harassment. Dwayne Hermes regularly encouraged Diaz-Roa to flirt to attract potential clients or use her appearance to attract business while she worked remotely from New York. A-33 ¶¶ 69-71. Dwayne Hermes also fixated on Diaz-Roa's appearance, among other harassing behaviors. *Id.* ¶¶ 72, 75-76. He did not comment on the appearances of male employees, but he did comment that two other female employees looked like a "lesbian couple" while at a New York ClaimDeck retreat. *Id.* ¶¶ 73-74.

Notwithstanding, Diaz-Roa was an excellent employee. She took on leadership roles and became the main driver of ClaimDeck's success, attending numerous events as an officer of the company, garnering important speaking engagements, and earning industry accolades. A-30-31 ¶¶ 51-57. Diaz-Roa also took on numerous responsibilities in creating the fundamental infrastructure for ClaimDeck. A-30 ¶ 54. As a result, she earned praise for her "calm leadership style," ability to "recognize an issue, analyze it, and solve it quickly" and capacity to "[get] things done." A-32 ¶ 60. "In Diaz-Roa's May 2022 performance review, neither Dwayne Hermes nor any other reviewer could find a single area where

Diaz-Roa needed to improve." A-31 ¶ 59. Diaz-Roa's coworkers raved about her as well, calling her a "[g]reat teammate" and praising her "knowledge, expertise, and willingness to hear new ideas." A-32 ¶ 61. On October 11, 2023, mere weeks before she was dismissed for alleged "cause," Diaz-Roa was commended for her "vision and ideas" and singled out for creating a "harmonious team atmosphere." *Id.* ¶ 62.

In August 2023, Diaz-Roa's ClaimDeck options vested. *Id.* ¶ 63. In a December 2023 call with Dwayne Hermes and others, Diaz-Roa stated her intention to exercise her options. *Id*. ¶ 64. On January 23, 2024, Diaz-Roa wrote to Dwayne Hermes again informing him that she intended to exercise her options. *Id*. ¶ 66. Defendants fired Diaz-Roa 17 days later allegedly for "cause," forfeiting Diaz-Roa's options, which were worth about $1 million. A-32-33 ¶ 67.

Diaz-Roa immediately challenged her dismissal. A-241. On February 9, 2024, and February 24, 2024, she notified Defendants in writing of a "potential legal dispute" concerning her employment and directed them to preserve all relevant documents. A-241, 243. Defendants responded with hold letters of their own. A-245-6.

## II. THE LAWSUITS AND ARBITRATION

On March 14, 2024, shortly after receiving Diaz-Roa's demand letters, Defendants sued Diaz-Roa in the Northern District of Texas pursuant to the

4

Declaratory Judgment Act, 28 U.S.C. § 2201, seeking no affirmative relief, only declarations that they had "cause" to fire Diaz-Roa and that she does not own any equity in ClaimDeck. *See Hermes Law PC et al. v. Diaz-Roa*, 3:24 Civ. 00624-K (N.D. Tex.) (the "Texas Action").

On March 20, 2024, Diaz-Roa filed this action (the "New York Action") alleging that Defendants (1) violated Delaware law and New York Labor Law § 193 ("NYLL") by terminating her employment to deprive her of compensation and (2) subjected her to sexual harassment in violation of the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL"), and the New York State Human Rights Law, Executive Law §§ 290 *et seq.* ("NYSHRL").[2] Diaz-Roa sought damages and affirmative injunctive relief.

On April 8, 2024, Diaz-Roa moved to dismiss the Texas Action because, *inter alia*, it was nothing more than an improper anticipatory lawsuit.[3] On May 13, 2024, Defendants responded to Diaz-Roa's motion to dismiss by asking the Texas

---

[2]    Diaz-Roa filed her action in New York because she lived and worked in New York City. She also filed a charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

[3]    According to binding Fifth Circuit authority, Defendants' lawsuit is a "misuse of the Declaratory Judgment Act." *Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.*, 48 F.4th 603, 606 (5th Cir. 2022); *see also Tape & Techs., Inc. v. Davlyn Mfg. Co.*, No. Civ.A.SA-04CA1150XR, 2005 WL 1071269, at *3 (W.D. Tex. May 6, 2005) (parties may not "secure [their] preferred forum by filing an action for a declaratory judgment when [they have] notice that another party intends to file suit involving the same issues in a different forum").

5

court to "stay or dismiss" their own case and – for the first time since filing their affirmative Texas Action in court two months prior – articulated their desire to compel arbitration. A-58 ¶¶ 81-82. They then filed an arbitration proceeding before the American Arbitration Association ("AAA") seeking the same relief as sought in the Texas Action.[4]

On July 17, 2024, Defendants moved in the New York Action to, *inter alia*, compel Diaz-Roa to arbitrate her non-sexual harassment claims. SPA-1. Defendants' principal argument was that the EFAA did not apply to Diaz-Roa's case because she had failed to assert a plausible claim for sexual harassment under New York's discrimination laws. SPA-46. In the alternative, and almost as an aside, Defendants requested that the court stay Plaintiff's sexual harassment claims "pending completion of arbitration of the remaining claims against Defendants." SPA-18. Other than citing *Mera v. SA Hosp. Grp., LLC*, 675 F. Supp. 3d 442, 447 (S.D.N.Y. 2023), however, Defendants did not explain in any detail why claim-splitting was appropriate.

Diaz-Roa responded by citing *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 539 (S.D.N.Y. 2023), which held that the EFAA renders non-arbitrable "the

---

[4]     Both the Texas Action and arbitration have been stayed pending a resolution of this appeal. *Diaz-Roa v. Hermes Law, P.C.*, No. 24 Civ. 2015 (LJL), 2025 WL 1151483 (S.D.N.Y. Apr. 18, 2025) ("*Diaz-Roa II*"). The New York Action is also stayed pending this interlocutory appeal. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 734 (2023).

entirety of the case relating to the sexual harassment dispute, not merely those discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute." SPA-42-43. In the alternative, Diaz-Roa argued that Defendants had waived any right to arbitrate by filing the Texas Action. SPA-19.

## III.  THE DISTRICT COURT'S DECISION

On November 21, 2024, the district court[5] denied Defendants' request to split Diaz-Roa's claims between court and arbitration. *Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498 (S.D.N.Y. 2024) ("*Diaz-Roa I*"). It methodically explained the difference between the term "case," which "'is familiar to the law' and 'captures the legal proceeding as an undivided whole,'" *Id.* at 532 (quoting *Johnson*, 657 F. Supp. 3d at 559), and "claim," which is a "narrower term" that Congress used "elsewhere in the statute concerning the EFAA's effective date." *Id.* (citing *Johnson*, 657 F. Supp. 3d at 559). It concluded that "if the EFAA is properly invoked and applies, the pre-arbitration agreement is invalid and unenforceable with respect to the entire case." *Id.*

It further reasoned that "a requirement that the litigant split their claims, trying some in arbitration and others in court, 'would be inconsistent with Congress's stated purpose in enacting the EFAA: to empower claims by sexual

---

[5]      Unless stated otherwise, "district court" refers to the court in the New York Action.

harassment and/or sexual assault victims that had been inhibited by proliferating arbitration clauses in employment agreements.'" *Id.* (quoting *Baldwin v. TMPL Lexington LLC*, No. 23 Civ. 9899, 2024 WL 3862150, at *8 (S.D.N.Y. Aug. 19, 2024). In doing so, the district court expressly rejected the decision in *Mera* as "antithetical to the language of the EFAA and its protective intent." *Id.* at 532 n.9.

The district court, however, rejected Diaz-Roa's argument that Defendants waived the right to arbitrate by filing the Texas Action. It acknowledged that, pursuant to the Supreme Court's decision in *Morgan v. Sundance, Inc.*, 596 U.S. 1708 (2022), a party asserting waiver is no longer required to show prejudice. *Diaz-Roa I*, 757 F. Supp. 3d at 528. Rather, the only question is whether the party seeking to compel arbitration "'knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right.'" *Id.* (quoting *Brown v. Peregrine Enter., Inc.*, No. 22-2959, 2023 WL 8800728, at *3 (2d Cir. Dec. 20, 2023)). Nevertheless, the district court found that Defendants did not waive the right to arbitration by filing the Texas Action because (1) they waited an "insubstantial" period to compel arbitration of their own case; (2) "[t]he amount of litigation that . . . transpired [was] . . . not significant"; and (3) "there [wa]s no indication that the parties ha[d] taken extensive discovery in the Texas Action, that [Diaz-Roa] prevailed as to anything, or that substantive issues ha[d] been extensively litigated." *Id.* at 529-30.

On November 21, 2024, Defendants filed an interlocutory appeal pursuant to

9 U.S.C. § 16(a)(1)(C).

## SUMMARY OF ARGUMENT

The district court properly held that the EFAA barred the forced arbitration of Diaz-Roa's entire "case," including those "claims" that did not directly allege a sexual harassment dispute. The EFAA's operative language is plain and unambiguous. It renders invalid and unenforceable an arbitration agreement with respect to "a *case* which is filed . . . and relates to [a] . . . sexual harassment dispute." 9 U.S.C. § 402(a) (emphasis added). A "case" is an action or legal proceeding as whole. Thus, the district court properly rejected Defendants' request that Diaz-Roa split her various claims between court and arbitration. Had Congress intended to exempt from arbitration only those parts of the "case" that relate to a sexual harassment dispute, it would have used the word "claim" as it did in other parts of the statute. Plainly, Congress knew the difference between a "case" and "claim" when it drafted the statute.

Because the statutory text is plain, there is no cause to resort to other methods of statutory interpretation to define its meaning, as Defendants urge. Nevertheless, all of Defendants' non-textual arguments are meritless. First, there is no policy favoring arbitration. On the contrary, courts must treat agreements to arbitrate like any other contract. Even if there were such a general preference, however, it would not apply to the EFAA, which is a direct amendment to the

Federal Arbitration Act ("FAA") designed to narrow its reach. Second, by requiring that an entire "case" proceed in court where the EFAA applies, Congress expressly abrogated any purported preference for splitting claims between different forums. Finally, the legislative history of the EFAA, which described the lack of transparency and fairness in arbitration proceedings, further supports the district court's rejection of Defendants' claim-splitting argument.

This Court should also affirm the district court's decision on the alternative ground that Defendants waived their right to arbitrate by suing Diaz-Roa in the Texas Action, where they raised many of the same claims they now seek to arbitrate. Here, the district court erroneously found that there was no waiver because Defendants waited an "insubstantial" period to move to compel arbitration of their own case, and little discovery or substantive motion practice occurred. However, these factors are no longer relevant after *Morgan*, where the Supreme Court held that a party waives the right to arbitrate where it acts inconsistently with the assertion of such right. The party opposing arbitration is not required to also prove that she suffered prejudice. By affirmatively suing Diaz-Roa, Defendants clearly and unmistakably relinquished their right to arbitrate.

10

## ARGUMENT

## I.   STANDARD OF REVIEW

This Court reviews *de novo* the denial of a motion to compel arbitration. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 72 (2d Cir. 2017).  This Court also reviews *de novo* "questions of statutory interpretation."  *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023).  Finally, this Court may affirm "on any ground that finds support in the record, even if it was not the ground upon which the trial court relied."  *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 396 n.2 (2d Cir. 2018) (quoting *Headley v. Tilghman*, 53 F.3d 472, 476 (2d Cir. 1995)).

## II.   THE EFAA

The EFAA provides that "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed . . . and relates to [a] . . . sexual harassment dispute," 9 U.S.C. § 402(a), which is broadly defined as a "dispute relating to conduct that is alleged to constitute sexual harassment."  9 U.S.C. § 401(4).  Where the EFAA applies, a pre-dispute arbitration agreement is unenforceable as to "the entirety of the case relating to the sexual harassment dispute, not merely the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute."  *Johnson*, 657 F. Supp.

3d at 559.

Diaz-Roa's Amended Complaint easily clears this hurdle. In her pleadings, Diaz-Roa has identified a "dispute"[6] between herself and her former employers concerning whether she is a victim of sexual harassment in violation of New York law. A-22-29. She has identified specific "conduct"[7] by Defendants that she contends constitutes sexual harassment. SPA-51-52. Accordingly, there can be no doubt that Diaz-Roa "filed" a "case" that "relates to" a "sexual harassment dispute" and, therefore, her arbitration agreement with Defendants is neither "valid [n]or enforceable." 9 U.S.C. § 402(a).

Defendants nevertheless argue that the district court erred by refusing to split Diaz-Roa's claims and compel arbitration of her non-sexual harassment claims. In Defendants' view, the EFAA's "plain language" and other non-textual factors, such as the "liberal federal policy favoring arbitration agreements," requires that Diaz-Roa split her claims between court and arbitration. Dkt. No. 28.1, Defendants-Appellants' Opening Brief ("Opening Br.") 11. They are wrong.

---

[6] A "dispute" is "[a] conflict or controversy, esp. one that has given rise to a particular lawsuit. *Dispute*, Black's Law Dictionary (12th ed. 2024).

[7] "Conduct" is "[p]ersonal behavior . . . the manner in which a person behaves." *Conduct*, Black's Law Dictionary (12th ed. 2024).

### A.     <u>The Statutory Language</u>

Any analysis of the EFAA must start with its statutory text. *United States v. Bedi*, 15 F.4th 222, 226 (2d Cir. 2021). "Where the text is plain and unambiguous, the Court's inquiry ends there." *Johnson*, 657 F. Supp. 3d at 558; *see also Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 673-74 (2020) ("This Court has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end."). The EFAA makes a pre-dispute arbitration agreement invalid "with respect to a *case*" that "relates to" a "sexual harassment dispute." 9 U.S.C. § 402(a) (emphasis added). In ordinary parlance, a case refers to "a suit or action in law or equity," and not the individual causes of action that make up an entire suit. *See Case*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/case (last accessed June 23, 2025). The legal definition of "case" is consistent with this contemporary usage. A case is "[a] civil or criminal proceeding, action, suit, or controversy at law or in equity." *Case*, Black's Law Dictionary (11th ed. 2019).

It makes sense, then, as the *Johnson* court held, that the EFAA's "text is clear, unambiguous, and decisive" as to the scope of the "invalidation . . . clause," which applies "to the entire 'case' relating to the sexual harassment dispute" rather than just "the claim or claims in which that dispute plays a part." 657 F. Supp. 3d at 558; *see Baldwin*, 2024 WL 3862150, at *7 ("[T]he EFAA's invalidation of an

13

arbitration agreement applies with respect to the entire case, rather than the discrete sexual harassment claims that form part of the dispute."). Thus, so long as the complaint alleges some conduct that meets the definition of "sexual harassment dispute," the entire case is exempt from arbitration. *Johnson*, 657 F. Supp. 3d at 561.[8]

Defendants nevertheless argue that the plain language of the EFAA mandates the opposite result. To them, the statute renders the arbitration agreement invalid and unenforceable as to only those "*claims* in the case that relate to a sexual harassment dispute." Opening Br. 15-16 (emphasis added) (quoting *Mera*, 675 F. Supp. 3d at 447). But that is decidedly *not* what the statute says. It invalidates the arbitration agreement "with respect to [the] case," 9 U.S.C. § 402(a). "[A] '[c]ase' or 'action' refers to an overall proceeding filed in a court, whereas a 'claim' or a 'cause of action' refers to a specific assertable or asserted right within such a proceeding." *Johnson*, 657 F. Supp. 3d at 559. Thus, as the Supreme Court has explained, multiple "claims" make up "one constitutional 'case.'" *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)); *see also* Fed. R. Civ. P. 18(a) (a plaintiff "may join, as independent or alternative claims, as many claims

---

[8]    *Johnson* has been "widely followed" by courts both within and outside its district. *Baldwin*, 2024 WL 3862150, at *7; *see Ruiz v. Butts Foods, L.P.*, No. W2023-01053-COA-R3-CV, 2025 WL 1099966, at *12 (Tenn. Ct. App. Apr. 14, 2025) (collecting cases).

as it has against an opposing party" in one case). In other words, the statute means what it says when it invalidates the arbitration agreement for the whole "case" – not merely those discrete "claims" that relate to sexual harassment. *See Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016) ("Congress says what it means and means what it says.").[9]

Defendants respond that the district court erred because it "conflated the term 'case' with the word 'action.'" Opening Br. 21. According to them, "[t]hroughout the EFAA and the FAA – including pre-existing FAA provisions that the EFAA amended – Congress has consistently used that distinct term ['action'] to refer to an entire legal proceeding." Opening Br. 22. Once again, they misread the statute. The FAA uses the terms "action" and "case" interchangeably to refer to the proceedings as a whole. For instance, § 205, entitled "Removal of *cases* from State court," authorizes the removal to federal court of an "*action or proceeding*" concerning a foreign arbitral award. (Emphasis added). In other words, for the purposes of the FAA, a "case" is an "action or

---

[9]     The result would be the same even if Defendants focused on the word "dispute." A "dispute" is a "controversy between the parties regarding certain kinds of conduct, conduct which may support claims under state and federal law." *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 408 (6th Cir. 2025). By its plain language, the EFAA invalidates the arbitration agreement as to the whole "case" related to a "sexual harassment dispute," not only the singular "dispute." 9 U.S.C. § 402(a).

proceeding."[10]  Similarly, § 7 authorizes arbitrators to issue subpoenas "in a proper *case*" to compel information that may be used "as evidence in the *case*," meaning the legal proceeding as a whole.  (Emphasis added); *see Gen. Dynamics Land Sys. v. Cline*, 540 U.S. 581, 595 (2004) ("[I]dentical words used in different parts of the same [a]ct are intended to have the same meaning.").

By contrast, Congress chose the word "claim" to refer to "the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute." *Johnson*, 657 F. Supp. 3d at 559.  Specifically, the EFAA applies "to any dispute *or claim* that arises or accrues on or after Mar. 3, 2022." *Id*. (Emphasis added) (quoting Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022)). In *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 85 (2d Cir. 2024), this Court analyzed "what it means for a claim to 'accrue,'" and whether, under the facts of the case, the plaintiff's "claims" for retaliation for reporting sexual harassment "accrued 'on or after' the Effective Date" of the EFAA.  Throughout the decision, this Court used the terms "claim" and "cause of action" interchangeably,[11] ultimately concluding that the EFAA applied because the

---

[10]      By using the word "case," Congress no doubt intended to capture the various ways in which a legal matter can be initiated.  In New York, for instance, "[a]n action is commenced by filing a summons and complaint," while a "special proceeding is commenced by filing a petition."  C.P.L.R. 304(a).  Pursuant to § 205, however, the entire legal proceeding, regardless of how it was initiated, can be removed to federal court.

[11]      *See*, *e.g.*, *id.* at 87 (reasoning that "[s]ome *claims* arise when the defendant commits the injurious act," while "[s]ome *causes of action* accrue serially") (emphasis added).

plaintiff's "retaliation-based hostile work environment claims . . . accrued after the [statute's] Effective Date." *Id*. at 91.[12]

It is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citations omitted); *accord Cath. Charities Bureau, Inc. v. Wis. Lab. & Indus. Review Comm'n*, 145 S. Ct. 1583, 1606 (2025). Had Congress intended the EFAA to apply only to claims related to sexual harassment, it could have omitted the reference to a "case" and simply prohibited arbitration "with respect to the sexual harassment dispute." Because Congress instead chose the word "case," it should be taken at its word that "case" means the entire "case" (or "action or proceeding"), and not just those "claims" that derive from the facts of the sexual harassment dispute.

Defendants protest that the district court's interpretation of the EFAA "takes relatedness out of the inquiry altogether." Opening Br. 25. Not so. As

---

[12]    In *Newton v. LVMH Moet Hennessy Louis Vuitton, Inc.*, 746 F. Supp. 3d 135, 151 (S.D.N.Y. 2024), by contrast, the court severed a sexual harassment "claim" that "accrued prior to [the] enactment" of the EFAA. The court did not, as Defendants misleadingly suggest, send the individual claim to arbitration because it was unrelated to a sexual harassment dispute. Opening Br. 27. To the contrary, the court agreed with the overwhelming majority of decisions that "where a dispute presents multiple claims – some related to sexual harassment, other not – the EFAA blocks arbitration of the entire case." *Id.* at 151; (quoting *Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 180 (2d Cir. 2023)).

Defendants admit, "relates" is a relative term, which means "to connect (something) with (something else)." *Id*. (quoting *The Merriam-Webster Dictionary*, https?//tinyurl.com/4apnbf2 (last visited Mar. 26, 2025)). The EFAA makes clear that the two things that must be connected to invalidate an arbitration agreement are a "case" and a "sexual harassment dispute," 9 U.S.C. § 402(a), and not, as Defendants would have it, a "claim" and a "sexual harassment dispute."

Ultimately, Defendants must rely on *Mera*, an outlier decision, to argue that the EFAA requires a court to split off non-sexual harassment claims to arbitration. Opening Br. 26. But *Mera* "is easily distinguished." *Baldwin*, 2024 WL 3862150, at *8 n.5. In *Mera*, "[t]he plaintiff . . . brought – in addition to sexual harassment claims under the NYSHRL and NYCHRL on her own behalf – FLSA and NYLL wage-and-hour claims on behalf of an FLSA collective and a putative NYLL class" on behalf of other employees. *Id*. "That distinction is not present in this case, because [Diaz-Roa's] claims are all brought on her behalf only." *Id*.

Further, *Mera* was wrongly decided. *Diaz-Roa I*, 757 F. Supp. 3d at 552 n.9. *Mera*'s approach, which "would require courts to carve up every case to which the EFAA applies by reaching judgment – with respect to each claim – on whether the claim relates to the sexual harassment despite or sexual assault dispute," is both "antithetical to the language of the EFAA and its protective intent." *Id*. It is also wholly unworkable because it would require a court to

address at the pleading stage the relationship between the plaintiff's sexual harassment and other claims, which is "not self-evident." *Id*.

Even if Defendants were correct (they are not), and each individual claim must "relate[] to" the sexual harassment dispute, 9 U.S.C. § 409(a), Diaz-Roa would still prevail. By using the phrase, Congress signaled the EFAA's "broad scope" and "expansive sweep." *Morales v. Transworld Airlines*, 504 U.S. 374, 383 (1992). Here, all Diaz-Roa's "claims clearly relate, factually and temporally, to her sexual harassment claims." *Baldwin*, 2024 WL 3862150, at *8. "They all arise from [Diaz-Roa's] employment" and "relate to 'her own experience and employment' there." *Id*. (quoting *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 926 (N.D. Cal. 2023)). Indeed, employees like Diaz-Roa will often "pursue[], in one lawsuit, wage, harassment and/or discrimination claims against the same employer." *Id*.

### B.  **Defendants' Non-Textual Arguments**

Perhaps recognizing that they cannot overcome the plain text of the EFAA, Defendants resort to cherry-picked legislative history and manufactured policy-based reasons why they say the EFAA should not invalidate an arbitration agreement as to an entire "case." However, "[i]nsofar as Defendants raise 'public-policy considerations' to avoid the [EFAA's] plain meaning, such 'policy concerns cannot trump the best interpretation of the statutory text.'" *Olivieri*, 112 F.4th at

19

90 (quoting *Patel v. Garland*, 596 U.S. 328, 346 (2022)).  Regardless, each of Defendants' arguments is meritless.

First,  Defendants argue that there is a policy favoring arbitration, which "commands [that] all doubts . . . be resolved in favor of arbitration."  Opening Br. 12.  As the Supreme Court recently made clear, however, the FAA does not prefer arbitration.  Rather, the policy favoring arbitration "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts."  *Morgan*, 596 U.S. at 412 (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010)).  Indeed, courts are barred from "using custom-made rules, to tilt the playing field in favor (or against) arbitration."  *Id.* As such, there is no basis for a court to ignore the statutory command that invalidates Diaz-Roa's arbitration agreement as to her entire "case."

Moreover, even if there were such a preference, it would not apply to the EFAA, which "is the first major amendment in the history of the FAA," and "is codified directly into the FAA and limits the scope of this broad mandate to enforce arbitration agreements."  *Olivieri*, 112 F.4th at 84.  In other words, "Congress articulated an entirely different intent when it amended the FAA by adopting the EFAA – to *contract* arbitrability, not to expand it.  In the EFAA context, therefore, a 'heavy presumption' of arbitrability is not appropriate."  *Doe*

20

*v. Second Street Corp.*, 105 Cal. App. 5th 552, 572 (Cal. Ct. App. 2d Dist. 2024) (emphasis in original); *see Steinberg v. Capgemini Am., Inc.*, No. 22-489, 2022 WL 3371323, at *2 (E.D. Pa. Aug. 16, 2022) (the EFAA was intended to "chip away at the breadth of the FAA" and "pull[] back on the long held presumption toward arbitration where sexual harassment is concerned").[13]

Second, Defendants cite *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011), for the proposition that "when a complaint contains both arbitrable and non-arbitrable claims, the [FAA] requires courts to 'compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibility of inefficient maintenance of separate proceedings in different forum.'" Opening Br. 27. Defendants miss the point of the case. *Cocchi* stands for the now unremarkable proposition that a court must "enforce the bargain of the parties to arbitrate." 565 U.S. at 21 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985)). The EFAA, by contrast, renders invalid and unenforceable an arbitration agreement that would otherwise block a plaintiff from litigating in court a case that relates to a sexual harassment dispute. Put simply, once the EFAA is triggered, there is no bargain to enforce because, as regards the

---

[13] Defendants also claim that "statutory exceptions [to arbitration] must 'be afforded a narrow construction.'" Opening Br. 17 (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118 (2001)). But this merely restates Defendants' baseless argument that the FAA prefers arbitration, which, as explained above, the Supreme Court has rejected.

21

"case," the arbitration agreement is dead – forever.  9 U.S.C. § 402(a).

Moreover,  by directly amending the FAA with the EFAA, Congress expressed its "intent to override – in the sexual harassment context – the FAA's background principle that, in cases involving both arbitrable and on-arbitrable claims, 'the former must be sent to arbitration even if this will lead to piecemeal litigation.'"  *Johnson*, 657 F. Supp. 3d at 567 (quoting *Cocchi*, 565 U.S. at 19). There is nothing in the language of the EFAA that permits a court to sever from the litigation discrete claims that are unrelated to the sexual harassment dispute.  *See Gill v. US Data Mgmt., LLC*, No. 2:24 Civ. 05255, 2024 WL 5402494, at *2 (C.D. Cal. Dec. 2, 2024) ("Had Congress intended sexual harassment claims to be severed and litigated separately from otherwise arbitrable cases in which they arise, it would not have used the word 'case.'").[14]

Finally,  Defendants argue that certain statements by lawmakers support their position that the EFAA should be interpreted narrowly to "exempt[] from arbitration *only* claims that relate to sexual harassment disputes."  Opening Br. 18 (emphasis in original).  However, "[b]ecause the EFAA's text supplies a clear answer to the questions at issue here, the Court does not have any charter to

---

[14]      Defendants correctly point out that 9 U.S.C. § 2 makes "valid, irrevocable, and enforceable" any agreement to arbitrate a "controversy" in a "maritime transaction" or a "transaction involving commerce."  They are also correct that "the use of the term 'controversy' is synonymous with the term 'claim.'"  Opening Br. 23.  But this hardly helps Defendants' position.  The applicable EFAA provision refers to neither a "controversy" nor a "claim," it refers to a "case."

consider legislative history of this nature." *Johnson*, 657 F. Supp. 3d at 561 n.22.

Even if the court were to consider legislative history, Defendants' reliance on

"floor statements by individual legislators rank among the least illuminating forms

of legislative history." *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 307 (2017). By

contrast, the House Judiciary Committee's Report, which is among the "most

authoritative and reliable material of legislative history," *Disabled in Action of

Metro N.Y. v. Hammons*, 202 F.3d 110, 124 (2000), "identifies the EFAA's

purpose in broad terms: to prohibit 'forced arbitration' in 'cases involving sexual

assault or sexual harassment' because the 'arbitration system lacks transparency

and precedential guidance of the justice system' and is 'shielded from public

scrutiny,' and 'there is no guarantee that the relevant law will be applied to these

disputes or that fundamental notions of fairness and equity will be upheld in

process.'" *Johnson*, 657 F. Supp. 3d at 561 n.22.

Defendants protest that "[i]nterpreting § 402 to allow plaintiffs to litigate

claims related to sexual harassment disputes in court, while still requiring them to

arbitrate unrelated claims, accomplishes [Congress's] purpose," and that the

"district court's approach goes well beyond the purpose of the EFAA." Opening

Br. 19. "But statutory prohibitions often go beyond the principal evil to cover

reasonably comparable evils, and it is ultimately the provisions of our laws rather

than the principal of our legislators by which we are governed." *Oncale v.*

*Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998).  For instance, Congress could have determined that permitting a plaintiff to "opt out of arbitration for their entire case avoids the potential for inefficiency in having separate proceedings in court and an arbitration forum, and the related additional burden placed on the parties of having to litigate claims in both a court proceeding and an arbitration.  In addition, having a clear-cut rule that can be easily applied allows courts to avoid making the sometimes-difficult determination, particularly at the pleading stage, whether a given claim sufficiently overlaps with allegations of sexual harassment." *Liu v. Miniso Depot CA, Inc.*, 105 Cal. App. 5th 791, 804  (Cal. Ct. App. 2d Dist. 2024), *review denied* (Dec. 31, 2024).[15]

---

[15]     The Chamber of Commerce of the United States of America (the "Chamber") filed an Amicus Brief (ECF 39.1, the "Chamber Br.") that largely rehashes Defendants' arguments, with two exceptions.  First, the Chamber launches an *ad hominem* attack on plaintiffs' attorneys, describing some as "unscrupulous," Chamber Br. 5, 25, and painting an ominous picture of such attorneys as acting "[i]n the hope of extracting a higher settlement." *Id*. at 25.  In fact, plaintiffs' attorneys act to protect their clients' civil rights, and the EFAA was enacted, in part, because employers have a long history of abusing the arbitration process.  Second, the Chamber makes the specious argument that workers would lose the "benefits of arbitration" by enforcing the EFAA according to its plain terms and permitting the entire "case" to be litigated in court. *Id,* at 27.  But the EFAA allows a worker to "elect" to arbitrate her claims, 9 U.S.C. § 402(a), and therefore does not prevent a worker from choosing to arbitrate, if she wishes to do.

## III.  <u>WAIVER</u>

This Court may also affirm the district court's decision on the alternate ground that Defendants relinquished any right to arbitrate by filing a lawsuit against Diaz-Roa.[16]

"The right to arbitration, like any other contractual right, can be waived." *Brown*, 2023 WL 8800728, at *3 (quoting *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 455 (2d Cir. 1995)).  Waiver is the "intentional relinquishment or abandonment of a known right."  *Morgan*, 596 U.S. at 417 (quoting *U.S. v. Olano*, 507 U.S. 725, 733 (1993)).  "To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right."  *Id*.  The question is "[d]id [the party holding a right to arbitration] knowingly relinquish the right to arbitrate by acting inconsistently with that right?"  *Id*. at 412. "Waiver may be established by affirmative conduct or by a failure to act that evinces the intent to abandon the right."  *Coggins v. Cnty. of Nassau*, 615 F. Supp. 2d 11, 30 (E.D.N.Y. 2009) (Bianco, J.).  Such conduct includes "'undisputed acts or language so inconsistent with [the party's] purpose to stand upon his [or her] rights as to leave no opportunity for a reasonable inference to the contrary.'"  *Lawrence v. NYC Med. Prac., P.C.*, No. 18 Civ. 8649, 2023 WL 4706126, at *13 (S.D.N.Y. July 21, 2023)

---

[16]   As explained above, this Court may "affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied."  *Headley*, 53 F.3d at 476 (2d Cir. 1995) (citation omitted).

(quoting *Kamco Supply Corp. v. On the Right Track, LLC*, 149 A.D.3d 275, 281 (2d Dep't 2017)) (alteration in the original).

Prior to *Morgan*, most circuits also required a party opposing arbitration to prove that they suffered prejudice. *See La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010). Courts created this "bespoke rule of waiver for arbitration" because of a purported "federal policy favoring arbitration." *Morgan*, 596 U.S. at 416 (quoting *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115, 1120 (8th Cir. 2011). In *Morgan*, however, the Supreme Court held that federal courts were not authorized "to invent special, arbitration-preferring procedural rules." *Morgan*, 596 U.S. at 418. Rather, what had previously been described as an "overriding federal policy favoring arbitration," *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968), was merely a policy "to make 'arbitration agreements as enforceable as other contracts, *but not more so*.'" *Morgan*, 596 U.S. at 418 (emphasis added) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). Accordingly, the Supreme Court "[s]tripped" the "prejudice requirement" from the waiver test. *Id*. at 419. The sole test was now whether the party seeking to compel arbitration "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Id*.

Here, there can be no doubt that Defendants "voluntarily chose to litigate" and thus relinquished the right to arbitrate. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Products Co., Inc.*, 969 F.2d 585, 591 (7th Cir. 1992). In 2018, Diaz-Roa signed an arbitration clause that Defendants presented to her. SPA-19. In 2024, however, Defendants elected to file a lawsuit in federal court to resolve their disputes with Diaz-Roa. A-8-22. This was, no doubt, an attempt to win "a race to the [federal] courthouses" to secure their choice of a federal forum. *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 585 (S.D.N.Y. 1990) (quoting *Perez v. Ledesma*, 401 U.S. 82, 119 n.12 (1971) (Brennan, J. dissenting)). Nonetheless, it was a knowing, voluntary and intentional decision to have a court, not an arbitrator, resolve the matter. In other words, Defendants "invoked the litigation machinery" of the federal courts, *Nat'l Found. for Cancer Rsch. v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 775 (D.C. Cir. 1987), "thus signifying [their] election not to submit [their] dispute with [Diaz-Roa] to arbitration," *Cabintree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995).[17]

---

[17] In their lawsuit, Defendants explained why the court (not an arbitrator) had jurisdiction over the case and why the court sitting in the Northern District of Texas was the proper venue for the lawsuit. A-142-3. They also made repeated requests that the court (not an arbitrator) issue various declarations in their favor. A-142, 156-8. In other words, Defendants' "acts" (filing the lawsuit) and "language" (statements about why the court was the forum for the parties to resolve their disputes) are "so inconsistent" with their later effort to move the disputes to arbitration, that there can be "no opportunity for a reasonable inference" other than that Defendants waived any right to arbitrate. *Voest-Alpine Intern. Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 685 (2d Cir. 1983) (*quoting Alness Am. Portland Cement Works v. Degnon Contracting Co.*, 222 N.Y. 34, 37 (1917)).

27

The district court nevertheless found that Defendants did not waive the right to arbitrate because the amount of time that elapsed between Defendants' filing of the Texas Action and their motion to compel arbitration (two-to-three months) was "insubstantial." *Diaz-Roa I*, 757 F. Supp. 3d at 529. Moreover, according to the district court, "there [wa]s no indication that the parties ha[d] taken extensive discovery in the Texas Action, that [Diaz-Roa] prevailed with regard to anything, or that substantive issues ha[d] been extensively litigated." *Id.* at 530. But none of these factors matter here. Defendants filed the lawsuit. Whether they continued to litigate for one day or one year, they manifested an unmistakable intention to litigate rather than arbitrate.

The district court, citing *La. Stadium*, nevertheless reasoned that "a plaintiff's initiation of a lawsuit does not, by itself, result in a waiver of arbitration." *Diaz-Roa I*, 757 F. Supp. 3d at 529. That was certainly true in 2010 when *La. Stadium* was decided and the party opposing arbitration had the added

---

That they later reconsidered and sought to move their own case to arbitration does not matter. Their act of affirmatively filing a lawsuit in court was an intentional act, manifesting a desire to have a court resolve their dispute with Diaz-Roa. Nor can they successfully claim that they did not act knowingly when they filed the Texas Action because they only discovered the arbitration agreement after filing. Hermes is not only a sophisticated party, but a law firm that drafted the agreement, presented it to Diaz-Roa and maintained possession of the agreement at the time it filed the Texas Action. *See Tech. in P'ship, Inc. v. Rudin*, 894 F. Supp. 2d 274, 279 (S.D.N.Y. 2012), *aff'd*, 538 F. App'x 38 (2d Cir. 2013) (defendant's possession of a document containing the relevant arbitration clause meant that he had "knowledge" of the arbitration clause).

28

burden of proving prejudice. For instance, in *Carcich*, the case that first injected the prejudice requirement into the waiver analysis, *Morgan*, 596 U.S. at 418, this Court reasoned that "it may appear that it is inconsistent for a party to participate in a lawsuit . . . and later to ask the court to stay that litigation pending arbitration." *Carcich*, 389 F.2d at 696. However, at the time, "[i]t [wa]s not 'inconsistency,' but the presence or absence of prejudice which is determinative" of waiver. *Id*. The party opposing arbitration in *Carcich* could not show prejudice despite two years of litigation because, *inter alia*, there was no showing that "they would have proceeded differently in the total litigation had a stay been requested earlier" and the moving party "ha[d] not taken unfair advantage of discovery proceedings which would not have been available in arbitration." *Id*. That is no longer the law. *Morgan* has now "stripped" the prejudice inquiry from the waiver test and "inconsistency" is the sole inquiry. *Morgan*, 596 U.S. at 419. And, as even *Carcich* seemed to acknowledge, the filing of a lawsuit, as Defendants did here, meets the inconsistency test.

That is not to say that the factors the district court considered can never be relevant. They act as a proxy for intent. Thus, a party that has responded to, and participated in, litigation while sitting on its arbitration rights can be found to have "evidenced a preference for litigation that supports a finding of waiver." *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 109 (2d Cir. 1997). But

there is no need to resort to such a proxy in a case where, as here, the party seeking to compel arbitration initiated the litigation in the first place.

## **CONCLUSION**

For these reasons, this Court should affirm the district court's decision.

Dated: June 26, 2025          Respectfully submitted,
     New York, New York

**WIGDOR LLP**

By: _____

     Valdi Licul

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com

*Counsel for Plaintiff-Appellee*

### CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE
### OF APPELLATE PROCEDURE 32(a)

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because it contains 7,313 words.

This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Microsoft Word

in the Times New Roman font, size 14.

Dated: June 26, 2025                        Respectfully submitted,
     New York, New York

     **WIGDOR LLP**

By: _____
     Valdi Licul

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com

*Counsel for Plaintiff-Appellee*

31