24-3223-cv
*Diaz-Roa v. Hermes Law*

# United States Court of Appeals
## for the Second Circuit

---

August Term 2025

(Argued: October 16, 2025 Decided: September 30, 2026 )

No. 24-3223-cv

---

SILVIA DIAZ-ROA,

*Plaintiff-Appellee*,

— v. —

HERMES LAW, P.C., SYZYGY LEGAL TECH, INC., DOING BUSINESS AS CLAIMDECK, DWAYNE HERMES, ANDREA HERMES,

*Defendants-Appellants*.

---

Before: WALKER, BIANCO, and PÉREZ, *Circuit Judges*.

In 2022, the President signed the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA") into law. *See* Pub. L. No. 117-90, 136 Stat. 26 (codified at 9 U.S.C. §§ 401–02). When properly invoked, the EFAA enables a plaintiff who alleges conduct constituting sexual harassment or sexual assault to elect to invalidate an arbitration agreement that predates the alleged harassment or assault. This case requires us to decide whether—in making such an election pursuant to the EFAA—a plaintiff can invalidate the relevant pre-dispute

arbitration agreement as to each of the claims within the plaintiff's lawsuit, or only as to sexual harassment or sexual assault claims within that lawsuit. Here, Plaintiff-Appellee Silvia Diaz-Roa sued her employers, Defendants-Appellants Hermes Law, P.C., Syzygy Legal Tech, Inc. (doing business as "ClaimDeck"), and related individuals (collectively, "Defendants"), asserting claims for sexual harassment, as well as non-harassment claims in connection with allegations that Defendants unlawfully terminated her employment to prevent her from exercising previously-issued stock options that she had earned during her employment. We hold that, when it is applicable, the EFAA enables a plaintiff to invalidate a pre-dispute arbitration agreement as to the entire lawsuit, rather than only the sexual harassment or sexual assault claims contained within that lawsuit. In this case, the district court denied Defendants' motion to compel arbitration in its entirety, reasoning that the EFAA allowed Plaintiff's entire lawsuit—and each of its constituent claims—to proceed in court. Because we agree with that conclusion, we **AFFIRM** the order of the district court and **REMAND** the case for further proceedings.

FOR PLAINTIFF-APPELLEE: VALDI LICUL, Wigdor LLP, New York, New York.

FOR DEFENDANT-APPELLANTS: AMARI L. HAMMONDS, Orrick, Herrington & Sutcliffe LLP, Los Angeles, California (Andrew D. Silverman and Nicole Ries Fox, Orrick, Herrington & Sutcliffe LLP, New York, New York and Irvine, California; Elior D. Shiloh, Joan B. Lopez, and Casey Katz Pearlman, Lewis Brisbois Bisgaard & Smith LLP, New York, New York, *on the brief*).

JOSEPH F. BIANCO, *Circuit Judge*:

In 2022, the President signed the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA") into law. *See* Pub. L. No. 117-90, 136 Stat. 26 (codified at 9 U.S.C. §§ 401–02). When properly invoked, the EFAA enables

a plaintiff who alleges conduct constituting sexual harassment or sexual assault to elect to invalidate an arbitration agreement that predates the alleged harassment or assault. This case requires us to decide whether—in making such an election pursuant to the EFAA—a plaintiff can invalidate the relevant pre-dispute arbitration agreement as to each of the claims within the plaintiff's lawsuit, or only as to sexual harassment or sexual assault claims within that lawsuit. Here, Plaintiff-Appellee Silvia Diaz-Roa sued her employers, Defendants-Appellants Hermes Law, P.C. ("Hermes Law"), Syzygy Legal Tech, Inc. (doing business as "ClaimDeck"), and related individuals (collectively, "Defendants"), asserting claims for sexual harassment, as well as non-harassment claims in connection with allegations that Defendants unlawfully terminated her employment to prevent her from exercising previously-issued stock options that she had earned during her employment. We hold that, when it is applicable, the EFAA enables a plaintiff to invalidate a pre-dispute arbitration agreement as to the entire lawsuit, rather than only the sexual harassment or sexual assault claims contained within that lawsuit. In this case, the district court denied Defendants' motion to compel arbitration in its entirety, reasoning that the EFAA allowed Plaintiff's entire lawsuit—and each of its constituent claims—to proceed in court. Because we agree with that

conclusion, we **AFFIRM** the order of the district court and **REMAND** the case for further proceedings.

## BACKGROUND

### I. Factual Background[1]

Diaz-Roa began working for the law firm Hermes Law in 2017, as an intern. Defendant-Appellant Dwayne Hermes ("Mr. Hermes") is an attorney who is the founder, owner, and CEO of Hermes Law, and Defendant-Appellant Andrea Hermes ("Ms. Hermes") was the firm's Office Manager. In February 2018, Diaz-Roa signed an arbitration agreement, in which she agreed to arbitrate any claims against Hermes Law (other than those concerning unemployment compensation benefits and certain claims relating to the disclosure of trade secrets or confidential information).[2]

---

[1] The following facts are taken from Diaz-Roa's complaint, which we accept as true for purposes of this appeal from a denial of a motion to compel arbitration. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012).

[2] The agreement provides, in relevant part:

> [Hermes Law] and [Diaz-Roa] mutually consent to the ultimate resolution by arbitration of all claims or controversies ("claims"), whether or not arising out of [Diaz-Roa's] employment or its termination, that [Hermes Law] may have against [Diaz-Roa] or that [Diaz-Roa] may have against [Hermes Law], its employees or agents.

App'x at 107.

Over the ensuing years, Diaz-Roa was promoted multiple times, ultimately becoming Hermes Law's Director of Innovation. In August 2019, Diaz-Roa and Mr. Hermes came up with an idea for a computerized litigation management company, called ClaimDeck, which was incorporated in February 2020. Thereafter, although Diaz-Roa was employed by Hermes Law, she performed work for ClaimDeck and was supervised by Mr. Hermes. During her time at ClaimDeck, Diaz-Roa received glowing performance reviews, and she eventually became ClaimDeck's Head of Product and Chief Operating Officer.

To reward her strong performance at ClaimDeck, Diaz-Roa was awarded stock options amounting to approximately 10% of the company's shares. The award was subject to a three-year vesting schedule, with the options becoming exercisable only upon completion of the vesting period. By August 2023, Diaz-Roa's stock options fully vested at an estimated value exceeding $1 million.

In December 2023, Diaz-Roa expressed her intention to exercise her stock options during a call with Mr. Hermes, ClaimDeck accountants, and an attorney. Following that initial communication, Diaz-Roa alleges that she repeatedly requested additional calls with ClaimDeck's attorneys and accountants without success. On January 23, 2024, Diaz-Roa reaffirmed her intent to exercise her stock

options in written correspondence to Mr. Hermes. Shortly thereafter, on February 9, 2024, Defendants terminated Diaz-Roa without warning, asserting that her dismissal was for cause (despite positive performance reviews as recently as October 2023).

Diaz-Roa also asserts that, throughout her tenure at ClaimDeck and Hermes Law, she was subjected to sexual harassment. In particular, she alleges that both Mr. and Ms. Hermes urged her to flirt with prospective clients as a means of "attract[ing] business" and encouraged her to pursue romantic relationships with industry colleagues for the purpose of "benefit[ing] her employers." App'x at 33. Diaz-Roa further alleges that Mr. Hermes made recurring remarks about her physical appearance "in front of other ClaimDeck and Hermes Law employees," including instructing "her to 'fix' her makeup and accusing her of looking 'tired.'" *Id.* Diaz-Roa also asserts that, at a November 2023 business dinner, Mr. Hermes allegedly compared her—the only woman at the dinner—to a piece of steak in front of their male business acquaintances. Diaz-Roa additionally alleges that, in or about 2017, Mr. Hermes "jumped onto a scooter that [she] was about to ride, sliding behind her in a compromising position" while another colleague took pictures. *Id.*

## II. Procedural Background

On March 14, 2024, Hermes Law and ClaimDeck filed an action for declaratory judgment in the United States District Court for the Northern District of Texas, seeking confirmation that they had terminated Diaz-Roa for cause, which would automatically terminate Diaz-Roa's stock options. After Diaz-Roa moved to dismiss the case as an improper anticipatory lawsuit, Hermes Law and ClaimDeck moved to compel arbitration, but the case was eventually stayed because of this lawsuit, which Diaz-Roa filed in the United States District Court for the Southern District of New York, on March 20, 2024, against Hermes Law, ClaimDeck, and Mr. and Ms. Hermes.

The operative complaint contains six causes of action: (1) sexual harassment in violation of the New York City Human Rights Law ("NYCHRL"), against all Defendants; (2) sexual harassment in violation of the New York State Human Rights Law ("NYSHRL"), against all Defendants; (3) breach of contract, against Hermes Law and ClaimDeck; (4) deprivation of earned compensation in violation of New York Labor Law § 193, against all Defendants; (5) tortious interference with contract, against Hermes Law and Mr. Hermes; and (6) conversion, against all Defendants. The non-sexual harassment claims relate to the alleged unlawful

termination of her employment by Defendants to prevent her from exercising previously issued ClaimDeck stock options.

On July 17, 2024, Defendants moved to compel arbitration, dismiss the case, and/or transfer the case to the Northern District of Texas. Shortly thereafter, on August 8, 2024, Diaz-Roa filed a motion to stay arbitration. On November 1, 2024, the district court stayed an ongoing arbitration proceeding that was filed by Hermes Law and ClaimDeck against Diaz-Roa pending further order of the court.

On November 21, 2024, the district court: (1) denied Defendants' motion to compel arbitration; (2) denied Defendants' motion to transfer the case to the Northern District of Texas; and (3) granted in part and denied in part Defendants' motion to dismiss. *See generally Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498 (S.D.N.Y. 2024). More specifically, pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court dismissed all claims against Ms. Hermes, as well as all claims against the remaining Defendants except for Diaz-Roa's NYCHRL and NYSHRL claims for sexual harassment and her claim for conversion. *Id.* at 554–71. With respect to the motion to compel arbitration and as relevant here, the district court concluded that "if the EFAA is properly invoked and applies, the pre-

arbitration agreement is invalid and unenforceable with respect to the entire case," not just Diaz-Roa's sexual harassment claims.[3] *Id.* at 532.

This appeal followed.[4]

---

[3] The district court also held that, in order to trigger the EFAA, "a plaintiff need only plead nonfrivolous claims relating to sexual assault or to conduct alleged to constitute sexual harassment, with the sufficiency of those claims to be reserved for proper merits adjudication." *Id.* at 533. In other words, the district court concluded a plaintiff need only meet the standard for determining federal court jurisdiction outlined in *Bell v. Hood*, 327 U.S. 678 (1946), to invoke the EFAA. *See id.* at 542–43; *see also, e.g.*, *Cardenas v. F.D. Thomas, Inc.*, No. 2:24-CV-01814-DAD-JDP, 2025 WL 418753, at *4–5 (E.D. Cal. Feb. 6, 2025) (adopting the district court's approach). Other district courts in this Circuit (and elsewhere) have come to a contrary conclusion. Those courts require a plaintiff to plausibly allege a sexual harassment or sexual assault claim under the standard articulated in the context of Rule 12(b)(6), pursuant to *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in order to trigger the EFAA. *See, e.g.*, *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 584–88 (S.D.N.Y. 2023); *Mangum v. Ross Dress for Less, Inc.*, 777 F. Supp. 3d 519, 525–29 (E.D.N.C. 2025) (adopting *Yost*'s approach); *see also Smith v. Boehringer Ingelheim Pharms., LLC*, No. 3:24-cv-01266, 2025 WL 2403042, at *5–6 (D. Conn. Aug. 19, 2025) (collecting cases doing the same). However, for two independent reasons, we need not resolve this split in authority by determining whether the *Bell v. Hood* nonfrivolous standard or the *Twombly*/*Iqbal* plausibility standard applies to the claims at issue when a plaintiff seeks to invoke the EFAA. First, Defendants do not argue on appeal that the district court's decision on the applicable standard was erroneous, and they have therefore forfeited any argument to the contrary. *See Tripathy v. McKoy*, 103 F.4th 106, 118 (2d Cir. 2024). Second, Defendants also do not challenge the district court's determination that Diaz-Roa's sexual harassment claims meet the *Twombly*/*Iqbal* plausibility standard and, thus, the EFAA is triggered here even assuming *arguendo* that the higher standard applies. *See Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 110 (2d Cir. 2003); *see also Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 376 (6th Cir. 2026) (leaving the question open for the same reasons).

[4] Our jurisdiction to hear this appeal is premised on the district court's denial of the motion to compel arbitration. *See* 9 U.S.C. § 16(a)(1)(C).

## DISCUSSION

We review a district court's denial of a motion to compel arbitration *de novo*. *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 100 (2d Cir. 2022).

### I. The Federal Arbitration Act & EFAA

Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4." 9 U.S.C. § 2. It is well established that Congress enacted the FAA "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (internal quotation marks and citation omitted).

However, in 2022, Congress amended the FAA to add the EFAA, which comprises the "chapter 4" referenced in Section 2. Therefore, the EFAA provides an exception to the otherwise general rule that arbitration agreements must be enforced according to their terms. *See State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 89 (2d Cir. 2024) ("Although the FAA provides for the enforcement of arbitration agreements, there are exceptions to that general

rule." (internal citation omitted)). As relevant to this appeal, Section 402(a) of the EFAA states:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a).

The EFAA also defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4).[5] By its terms, the EFAA's applicability "shall be determined by a court, rather than an arbitrator," under federal law, "irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing such agreement," or "whether the agreement purports to delegate such determinations to an arbitrator." *Id.* § 402(b).

[5] We have held that this definition includes a claim of retaliation resulting from a report of sexual harassment. *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 92 (2d Cir. 2024).

## II. The Effect of the EFAA

As described above, the district court held that the EFAA enables Diaz-Roa to invalidate the arbitration agreement she signed with Hermes Law as to all the constituent claims contained in her lawsuit, including her non-harassment claim for conversion. *See Diaz-Roa*, 757 F. Supp. 3d at 532–34.

On appeal, Defendants argue that the term "case," as used in Section 402 of the EFAA, refers not to the lawsuit as a whole, but rather to an individual claim within a lawsuit. Under this reading, Defendants maintain that, when a complaint pleads a viable sexual harassment claim together with claims that are otherwise arbitrable, the EFAA requires a court to set aside the arbitration agreement solely with respect to the harassment claim and those demonstrably "relate[d] to" it, while enforcing arbitration as to the remaining claims—even if doing so results in bifurcated proceedings. Applying that framework here, Defendants contend that Diaz-Roa's conversion claim must be severed from this action and compelled to arbitration. We disagree.

### A. Rules of Statutory Interpretation

"When interpreting a statute, we begin with the plain language of the statute, giving the statutory terms their ordinary or natural meaning." *Spadaro v.*

*U.S. Customs & Border Prot.*, 978 F.3d 34, 46 (2d Cir. 2020) (internal quotation marks and citation omitted). "[T]o ascertain a text's plain meaning, we draw on the specific context in which that language is used, and the broader context of the statute as a whole." *In re Soussis*, 136 F.4th 415, 427 (2d Cir. 2025) (internal quotation marks and citation omitted). If the plain meaning of the text is unambiguous, "our analysis usually ends there." *Williams v. MTA Bus Co.*, 44 F.4th 115, 127 (2d Cir. 2022) (internal quotation marks and citation omitted). "Only when the terms are ambiguous or unclear do we consider legislative history and other tools of statutory interpretation." *United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 171 (2d Cir. 2018).

**B. Plain Text of the Statute**

The operative language of the EFAA renders unenforceable any pre-dispute arbitration agreement "with respect to a *case* which . . . relates to [a] . . . sexual harassment dispute." 9 U.S.C. § 402(a) (emphasis added). The word "case" is read most naturally to refer to an entire lawsuit. The term is one of long familiarity and often operates as a commonplace descriptor for a judicial proceeding as a whole. Consistent with that understanding, widely accepted definitions describe "case" as "a suit or action in law or equity," *Case*, MERRIAM-WEBSTER ONLINE,

https://www.merriam-webster.com/dictionary/case [https://perma.cc/8YE3-B9HK] (last visited Sep. 25, 2026), or a "civil or criminal proceeding, action, suit, or controversy at law or in equity," *Case*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Chavez v. Martinez*, 538 U.S. 760, 766 (2003) ("The words 'case' and 'cause' are constantly used as synonyms in statutes and judicial decisions, each meaning *a proceeding in court, a suit, or action*." (plurality opinion) (internal quotation marks and citation omitted)).

By contrast, a "claim" denotes something narrower, such as a singular "demand for money, property, or a legal remedy to which one asserts a right" or "[a]n interest or remedy recognized at law." *Claim*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Brownback v. King*, 592 U.S. 209, 220–21 (2021) (Sotomayor, *J.*, concurring) (stating that, unlike an "action," "[i]ndividual demands for relief within a lawsuit, by contrast, are 'claims'"); Fed. R. Civ. P. 18(a) (explaining that a plaintiff "may join, as independent or alternative claims, as many claims as it has against an opposing party" in one case).[6]

[6] Similarly, a "cause of action" refers to "[a] group of operative facts giving rise to one or more bases for suing" or "a factual situation that entitles one person to obtain a remedy in court from another person." *Cause of Action*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Olivieri*, 112 F.4th at 85–92 (using the terms "claim" and "cause of action" interchangeably).

Consistent with these definitions, the Supreme Court and this Court frequently use the term "case" to refer to a lawsuit as a whole, and the term "claim" to refer to a specific cause of action within that lawsuit. *See, e.g.*, *Fox v. Vice*, 563 U.S. 826, 829 (2011) ("In this case, the plaintiff asserted both frivolous and non-frivolous claims."); *Nat'l Rifle Ass'n of Am. v. Vullo*, 144 F.4th 376, 379 (2d Cir. 2025) ("This case involves First Amendment claims brought by . . . .").

Moreover, the EFAA's drafters used the word "claim," instead of "case," elsewhere in the EFAA. *See* 9 U.S.C § 401 note (providing that the EFAA "shall apply with respect to any dispute or *claim* that arises or accrues on or after [March 3, 2022]" (emphasis added)). Thus, we conclude that "the use of different words within the same statutory context strongly suggests that different meanings were intended." *United States v. Maria*, 186 F.3d 65, 71 (2d Cir. 1999); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012) ("Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally."); *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457–58 (2022) (discussing this "well-settled" canon of statutory interpretation termed "the meaningful-variation canon"); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 170 (2012) ("[W]here [a]

document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea.").

Accordingly, we conclude that "case" in Section 402 plainly refers to a lawsuit as a whole, and thus, when a plaintiff successfully invokes the EFAA to invalidate a pre-dispute arbitration agreement "with respect to a case which . . . relates to [a] . . . sexual harassment dispute," 9 U.S.C. § 402(a), it invalidates the arbitration agreement as to all claims in that lawsuit, including any non-harassment claims.

Our interpretation of the EFAA is consistent with the two other circuits to consider this issue so far. In *Bruce v. Adams & Reese, LLP*, the Sixth Circuit held that "where a plaintiff brings multiple claims in a single suit against a party with whom she has an otherwise-valid arbitration agreement, and one of those claims alleges a 'sexual assault dispute' or a 'sexual harassment dispute,' the EFAA renders the arbitration agreement unenforceable with respect to each of the claims that comprise her case." 168 F.4th 367, 385–86 (6th Cir. 2026). Similarly, in *Ding v. Structure Therapeutics, Inc.*, the Ninth Circuit concluded that "[b]ecause the EFAA invalidates an arbitration agreement 'with respect to a case'—rather than a claim—that 'relates to' a sexual harassment dispute, [the plaintiff] is entitled to bring her

entire case in court." --- F.4th ----, No. 25-1532, 2026 WL 2420555, at *7 (9th Cir. Aug. 19, 2026) (internal citation omitted). Numerous district courts and state courts have also reached the same conclusion. *See, e.g.*, *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 558–61 (S.D.N.Y. 2023); *Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 180–81 (S.D.N.Y. 2023); *Puris v. TikTok Inc.*, No. 24-cv-944 (DLC), 2025 WL 343905, at *6 (S.D.N.Y. Jan. 30, 2025); *Ding v. Structure Therapeutics, Inc.*, 755 F. Supp. 3d 1200, 1218–19 (N.D. Cal. 2024); *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 924–26 (N.D. Cal. 2023); *accord McDermott v. Guaranteed Rate, Inc.*, 352 A.3d 1, 23–25 (N.J. Super. Ct. App. Div. 2025) (collecting cases).

**C. Defendant's Arguments**

As set forth below, we have examined Defendants' contrary arguments to support their interpretation of the EFAA and find each of them to be unpersuasive.

Defendants contend that the district court improperly conflated the term "case" with the word "action." However, the FAA uses "case" and "action" interchangeably (or at least synonymously) to refer to judicial proceedings in their entirety. *See, e.g.*, 9 U.S.C. § 205 (governing the "[r]emoval of *cases* from State courts" and providing for removal "[w]here the subject matter of *an action* or proceeding pending in State court relates to an arbitration agreement" subject to

the Convention on the Recognition and Enforcement of Foreign Arbitral Awards codified as Chapter 2 of the FAA (emphasis added)); *id.* § 13 (providing that a judgment confirming an arbitration award "may be enforced as if it had been rendered in an *action* in the court in which it is entered" (emphasis added)); *id.* § 16(a)(1)(A) (providing that an appeal may be taken from an order "refusing a stay of any *action* under section 3 of this title" (emphasis added)).[7]

This statutory phrasing accords with settled federal practice—of which Congress is presumed to be aware—under which a lawsuit is commenced by filing a complaint that initiates a single lawsuit (a "case") encompassing potentially numerous causes of actions ("claims"). Certainly, had Congress intended the limited result urged by Defendants, it could have employed far narrower language by referring to a "claim" rather than a "case," or emphasized that arbitration would only be invalidated as to *claims* relating to the sexual harassment dispute.

---

[7] "Case" and "action" are also generally synonymous with "suit" or "lawsuit." *See Suit*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Any proceeding by a party or parties against another in a court of law . . . ."); *see also* BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 862–63 (3d ed. 2011) (discussing the differing etymological development of the terms "suit," "lawsuit," "action," "case," and "cause," but noting that they all "denote proceedings instituted for the purpose of enforcing a right or otherwise seeking justice" and are "synonyms for a court proceeding" in modern usage).

It did neither.[8] *See Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 169 (2004) ("We can assume Congress legislated against [the relevant] background of law, scholarship, and history . . . ."); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (emphasizing that, when resolving questions of statutory interpretation, "we begin with the understanding that Congress says in a statute what it means and means in a statute what it says there" (internal quotation marks and citation omitted)). Therefore, Defendants' argument serves only to reinforce the conclusion that a "case" or "action" refers to the overall judicial proceeding, whereas a "claim" or "cause of action" denotes a specific right asserted within that proceeding.

Defendants further argue that, because Article III of the Constitution limits the exercise of judicial power to "cases" and "controversies," U.S. Const. art. III, § 2, cl. 1, and because standing must be established on a claim-by-claim basis, the term "case" must be synonymous with "claim." However, "case" in the Article III sense cannot mean the same thing as "claim," because even in that context a "constitutional 'case'" can be comprised of multiple "claims." *See Royal Canin*

---

[8] Indeed, Congress declined to proceed with a competing bill that would have applied only to "claim[s]" of sexual assault and certain claims of sexual harassment. *See* Resolving Sexual Assault and Harassment Disputes Act of 2021, S. 3143, 117th Cong. (2021).

*U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)) (discussing how a closely related federal "claim" and a state "claim" for purposes of supplemental jurisdiction can "comprise but one constitutional 'case'").[9] Thus, Article III's case-or-controversy requirement does not collapse the distinction between a case and its constituent claims under the EFAA.

We are similarly unpersuaded by Defendants' contention that to interpret "case" as the entirety of an action would render "relates to" superfluous. In

---

[9] To be sure, *Gibbs* acknowledged that Article III does not automatically apply to every claim within a case, *see* 383 U.S. at 725, seeing as a federal court may exercise supplemental jurisdiction over a state claim only "so long as it 'derive[s] from' the same 'nucleus of operative fact' as the federal one," *Wullschleger*, 604 U.S. at 27 (2025) (quoting *Gibbs*, 383 U.S. at 725). In this sense, a claim filed by a plaintiff in a case may nevertheless not be part of the same "constitutional 'case'" as the other claims for purposes of Article III. *See Gibbs*, 383 U.S. at 725. But we have no reason to think Congress was drawing on the specific constitutional meaning of the term "case" in Article III rather than the ordinary meaning of "case," as discussed *supra* and as used in common parlance today. *See New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019) (discussing the "fundamental canon of statutory construction that words generally should be interpreted as taking their *ordinary* meaning at the time Congress enacted the statute" (alterations adopted) (emphasis added) (internal quotation marks and citation omitted)). Indeed, in *Gibbs* itself, the Supreme Court recognized that the meaning of "case" "for jurisdictional purposes" may be "distinguish[able]" from "case" in other contexts. *See* 383 U.S. at 725 n.12 (distinguishing between "the issue whether a claim for relief qualifies as a case 'arising under . . . the Laws of the United States' and the issue whether federal and state claims constitute one 'case' for pendent jurisdiction purposes"). And, in any event, a "constitutional case" still encompasses multiple claims that arise out of the same facts—the claim-specific nature of Article III standing is thus not derived from the meaning of the word "case."

Defendants' view, under the district court's reading of "case," "a court considering a motion to compel does not perform the statute's required 'relatedness' analysis at all: It simply confirms [that] the complaint contains allegations of a sexual harassment dispute, and if so, the arbitration agreement is voided in toto." Appellants' Br. at 25. This argument misses the mark for several reasons.

As a preliminary matter, Defendants' surplusage argument rests on an expansive reading of the term "case" that is broader than the one we adopt. In practice, the scope of a "case" is neither indefinite nor unbounded, but rather is naturally limited by the rules governing joinder of claims. A case may include only those claims that are properly joined against the same defendant, *see* Fed. R. Civ. P. 18, that "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," Fed. R. Civ. P. 20, or that share common questions of law or fact, *id.* These procedural limits ensure that a "case" refers to a coherent, legally cognizable judicial proceeding comprised of related claims and parties—not an aggregation of unrelated disputes.

As to the phrase "relates to" itself, it is an expansive term that suggests Congress's intent to sweep broadly. "Relate" means "[t]o have some connection to; to stand in relation to." *Relate*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see*

*also Related*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Connected in some way; having relationship to or with something else . . . ."). Indeed, the Supreme Court has recently noted that "[t]he phrase 'relating to' sweeps broadly" and means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Chevron USA Inc. v. Plaquemines Par.*, 608 U.S. 1, 11 (2026) (internal quotation marks and citation omitted);[10] *see also Mizrahi v. Gonzales*, 492 F.3d 156, 159 (2d Cir. 2007) ("Congress's use of the phrase 'relating to' in federal legislation generally signals its expansive intent."). Nothing in the EFAA's text suggests that Congress intended to depart from this broad ordinary meaning of "relates to" or that, by inserting the relatedness requirement, Congress intended courts to parse a single lawsuit claim by claim for purposes of enforceability of the arbitration agreement once a sexual harassment dispute is properly before the court.

---

[10] *Chevron* involved the federal officer removal statute which authorizes an officer or "person acting under that officer" to remove state suits "for or *relating to* any act under color of such office." 28 U.S.C. § 1442(a)(1) (emphasis added). In interpreting the scope of "relating to" under this statute, the Supreme Court looked exclusively to the ordinary meaning of that phrase, and did not consider any interpretative tools that looked to the federal officer removal statute in particular. *See Chevron*, 608 U.S. at 11–14. Accordingly, we find *Chevron*'s analysis of the ordinary meaning of "relating to" instructive in discerning the ordinary meaning of "relates to" in the EFAA.

Moreover, contrary to Defendants' contention, our interpretation does not render "relates to" entirely superfluous. Syntactically, "relates to" ensures that "a case which is filed" is related to the dispute covered by the EFFA that a person is "alleging." 9 U.S.C. § 402(a). In other words, if Congress chose not to include "relates to," then the statute could be read to apply where a person "alleg[es] conduct" in some other forum—for example, in the media—thus invalidating an arbitration agreement as to *any* "case which is filed," regardless of the connection between the allegations and the particular lawsuit. *Id.* Because "relates to" therefore does this additional work under our reading, it is not superfluous.

Defendants also urge us to adopt an alternative analysis articulated in *Mera v. SA Hospitality Group, LLC*, 675 F. Supp. 3d 442 (S.D.N.Y. 2023). There, the magistrate judge had split the plaintiff's case in two—his hostile work environment claims stayed in court because of the EFAA, but his wage and hour claims were sent to arbitration because they did not "relate in any way to the sexual harassment dispute."[11] *Id.* at 448. Relying on the plain text of the EFAA,

---

[11] As other courts have recognized, the magistrate judge's decision in *Mera* is an outlier among district courts. *See Bruce*, 168 F.4th at 381 n.5 (noting that *Mera* is the only EFAA decision located by the Sixth Circuit denying arbitration on some claims in a lawsuit under the EFAA, but compelling arbitration as to others).

the district court judge in the same case reversed in relevant part.[12] *See Mera v. SA Hosp. Grp., LLC*, No. 23 CIV. 3492 (PGG) (SDA), 2025 WL 3202080 (S.D.N.Y. Nov. 17, 2025). In doing so, the district court determined that, because the term "'case'—as used in the EFAA—captures the legal proceeding as an undivided whole," and thus "where—as here—the EFAA is properly invoked and applies, a pre-dispute arbitration agreement is invalid and unenforceable as to the plaintiff's entire case, and not just to plaintiff's sexual harassment claims," which is consistent with our approach here, and contrary to Defendants'. *Id.* at *8–10 (internal quotation marks and citation omitted).

[12] We further observe that, unlike here, *Mera* involved the complication that the plaintiff's wage and hour claims were brought on behalf of a putative class and collective, but his hostile work environment claims were brought on an individual basis. *Mera*, 2025 WL 3202080, at *3 n.3. Other courts have distinguished the magistrate judge's opinion in *Mera* on that basis. *See, e.g.*, *Turner*, 686 F. Supp. 3d at 925–26; *Baldwin v. TMPL Lexington LLC*, No. 23 CIV. 9899 (PAE), 2024 WL 3862150, at *8 n.5 (S.D.N.Y. Aug. 19, 2024). We agree this provides a basis to distinguish *Mera* from the situation here, but we decline to address in this case—which has a single plaintiff asserting individual claims—how the EFAA applies in the context of class or collective actions. We similarly have no occasion to consider how the EFAA applies in the context of a case where one plaintiff properly invokes the EFAA, but another plaintiff in the same case does not allege sexual harassment or sexual assault. *See, e.g.*, *Lambert v. New Start Cap. LLC*, 799 F. Supp. 3d 258, 282–86 (S.D.N.Y. 2025) (addressing this issue); *see also Mera*, 2025 WL 3202080, at *9 n.6 ("Here, however, Mera is the sole plaintiff, and the parties have not briefed the issue of whether other plaintiffs would be able to avoid an arbitration agreement because of Mera's [individual] sexual harassment claims . . . .").

Moreover, the reading of the relatedness requirement advanced by Defendants mistakes the object of the relatedness requirement. They would require all *claims* to relate to the sexual harassment dispute. *See* Appellants' Br. at 12 (arguing that Diaz-Roa's "principal *claims* . . . plainly do not relate to sexual harassment" (emphasis added)); *id.* at 18 ("[T]he [EFAA] exempts from arbitration *only claims* that relate to sexual harassment disputes . . . ." (second emphasis added)). But it is "a case"—not "a claim"—that must "relate[] to" the "sexual harassment dispute." 9 U.S.C. § 402(a); *see also, e.g.*, *Kelly v. Rosenberg & Estis, P.C.*, 804 F. Supp. 3d 461, 468 (S.D.N.Y. 2025) ("[T]he plain text of the statute contains no such additional 'relation' requirement with respect to individual claims. The EFAA demands only that a 'case' relate to a sexual harassment dispute, not that each individual claim within the case must do so.").

Defendants next resort to reliance on the FAA's general policy favoring arbitration. But that argument fares no better. Specifically, Defendants emphasize that the FAA codified a "liberal federal policy favoring arbitration agreements." Appellants' Br. at 11 (quoting *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012)). The Supreme Court has recently clarified, however, that policy "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's

longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Morgan*, 596 U.S. at 418 (internal quotation marks and citation omitted). Furthermore, the FAA's "liberal federal policy favoring arbitration agreements" may be "overridden by a contrary congressional command." *CompuCredit*, 565 U.S. at 98 (internal quotation marks and citation omitted). It is therefore compelling that, in enacting the EFAA, Congress expressly amended the FAA to render pre-dispute arbitration agreements unenforceable for an entire action involving a sexual harassment dispute, marking a deliberate departure from the FAA's general policy favoring arbitration. *See Olivieri*, 112 F.4th at 84 (recognizing that, because "[t]he EFAA is codified directly into the FAA," it "limits the scope" of the FAA's "broad mandate to enforce arbitration agreements").

Finally, we reject Defendants' attempt to draw on the EFAA's legislative history in support of their proposition that Section 402 exempts from arbitration *only* sexual harassment claims in a lawsuit while other claims remain subject to arbitration. As an initial matter, we note that portions of the legislative history accord with our reading, or at the very least, create an ambiguous record. *See, e.g.*, 168 Cong. Rec. S627 (daily ed. Feb. 10, 2022) (statement of Sen. Kirsten Gillibrand)

("When a sexual assault or sexual harassment survivor files a court case in order to seek accountability, her single case may include multiple claims. . . . To ensure that a victim is able to realize the rights and protections intended to be restored to her by this legislation, all of the related claims will proceed together."); *id.* at S626–27 (statement of Sen. Dick Durbin) ("So to clarify, for cases which involve conduct that is related to a sexual harassment dispute or sexual assault dispute, survivors should be allowed to proceed with their full case in court regardless of which claims are ultimately proven."). In any event, given our resolution of this appeal based on the plain text of the EFAA, we have no need to delve into the conflicting arguments regarding the legislative history. *See United States v. Epskamp*, 832 F.3d 154, 162 (2d Cir. 2016) ("Generally speaking, we need proceed no further than the statute's text and context in the broader statutory scheme." (internal quotation marks and citation omitted)). In other words, because "the best evidence of Congress's intent is the statutory text," *Grajales v. Comm'r*, 47 F.4th 58, 62 (2d Cir. 2022) (internal quotation marks and citation omitted), and the statutory text here is unambiguous, we will not allow "ambiguous legislative history to muddy clear statutory language," *Milner v. Dep't of the Navy*, 562 U.S. 562, 572 (2011).

* * *

In sum, the plain text of the EFAA compels the conclusion that, when a "person alleging conduct constituting a sexual harassment dispute or sexual assault dispute" properly invokes the EFAA in a lawsuit and "elect[s]" to invalidate a pre-dispute arbitration agreement, the effect of that invalidation applies to the entire lawsuit—not just to particular claims within that lawsuit.

## III. Diaz-Roa's Claims

On appeal, Defendants do not contest that Diaz-Roa has properly invoked the EFAA as to her sexual harassment claims. Thus, applying our holding here, we conclude that Diaz-Roa can invalidate the arbitration agreement she signed with respect to not only her harassment claims, but to her entire lawsuit including her conversion claim, which is her only remaining non-harassment claim.[13] Thus, the district court correctly denied Defendants' motion to compel arbitration in its entirety.[14]

---

[13] Diaz-Roa does not challenge the district court's Rule 12(b)(6) dismissal of her other non-harassment claims for breach of contract, tortious interference with contract, and violation of New York Labor Law.

[14] Diaz-Roa alternatively argues that this Court may affirm the district court's decision "on the alternate ground that Defendants relinquished any right to arbitrate by filing a lawsuit against Diaz-Roa." Appellee's Br. at 25. However, because we conclude that the

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the order of the district court and **REMAND** the case for further proceedings.

EFAA renders the arbitration agreement unenforceable as to the entirety of Diaz-Roa's case, we need not address the issue of waiver.